FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Jacksonville Division**

2016 JAN 12 PM 3: 22

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

|  |  |
|---|---|
| MSC GROUP, INC.<br>d/b/a ONE CALL CARE MANAGEMENT,<br><br>Plaintiff,<br><br>v.<br><br>JORDAN BURCH,<br><br>Defendant. | Civil Action No. 3:16-CV-27-J-39JRK<br><br>**VERIFIED COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

Plaintiff, MSC Group, Inc. d/b/a One Call Care Management ("One Call"),

hereby files this Verified Complaint against Defendant, Jordan Burch ("Burch"), seeking

injunctive and other relief, and in support thereof avers as follows:

## BACKGROUND OF THE PARTIES AND THE ACTION

1.      One Call is the nation's leading provider of specialized cost containment

services to the workers' compensation industry.

2.      The cost containment market in which One Call conducts business is

highly competitive.

3.      One Call helps its customers – like third party payers (such as state funds,

insurance carriers, third party administrators, managed care organizations, and case

management companies) and self-insured employers – achieve faster, more efficient, and

more cost-effective resolution of claims.

4.      Through its service and product offerings, including audiology products

and services, complex care and home health services, equipment and devices, high-end

diagnostic procedures, physical medicine and physical therapy services, dental and doctor programs, transportation and language services, and other medical specialties, One Call provides its customers with consistent connections to care and improved outcomes.

5.     From September 2011 until October 31, 2015, Burch served as high-level One Call National Sales Director responsible for the sale and promotion of, among others, audiological and hearing aid products, programs, and services, with respect to individuals receiving workers' compensation benefits, to customers and accounts nationwide.

6.     Burch served as a subject matter expert in One Call's audiology programs, products, and services.

7.     As one of two Sales Directors in One Call's audiological and hearing aid line of business, Burch shared responsibility for key customers and accounts across the United States.

8.     As a condition of his employment and continued employment, Burch entered into non-compete, non-solicitation, and confidentiality agreements that required Burch to refrain from working in a competitive capacity for a period of one year following the termination of his employment, and refrain from retaining, using, or disclosing any of One Call's confidential or proprietary information.

9.     The agreements further prohibited Burch from using or disclosing One Call's confidential and proprietary information to third-parties, particularly competitors.

10.     Burch departed One Call on October 31, 2015 fully aware of his non-compete, non-solicitation, and non-disclosure obligations.

2

11.     Through this action, One Call seeks to remedy the harm caused and further threatened by Burch, and to restrain him from further breaching the post-employment contractual and legal obligations he owes to One Call.

12.     Before the end of his One Call employment, Burch – unbeknownst to One Call – forwarded to his personal email account One Call's National Audiology Business Plan.  Burch did not return the plan when he left One Call.

13.     Now, armed with One Call's business plan, instead of honoring his contractual and other legal obligations in good faith, Burch almost immediately – and secretly – joined the ranks of One Call's competitors and began soliciting One Call's key customers.

14.     Burch is now working with Advanced Hearing Products ("AHP"), to help facilitate the promotion and sale of competing hearing aid products, programs, and services.

15.     Burch is also working in conjunction with or seeking to work with One Call's direct competitor, Cypress Care.

16.     Burch did not notify One Call of his intent to join AHP, or his actual or intended work with Cypress Care, despite having a contractual obligation to notify One Call in writing if he took a role with a competitor that might implicate his post-employment obligations.

17.     Instead, One Call only learned of Burch's unlawful conduct when an email, apparently intended for Burch's personal or AHP email account, was inadvertently forwarded to his One Call email account that revealed the plot by Burch to divert One

Call sales and opportunities with a key One Call customer with whom Burch worked directly on behalf of One Call to One Call's competitors.

18.     If Burch is secretly calling upon one of his prior One Call accounts to divert business in breach of his agreements, it is highly likely – if not an absolute certainty – that he is actively soliciting and diverting business on other accounts as well.

19.     Equally as egregious, Burch is, upon information and belief, using and disclosing the confidential and proprietary information he obtained as a high level employee of One Call to compete against One Call, directly and indirectly, and undermine its competitive standing.

20.     Burch has breached the contractual and legal obligations he owes to One Call.

21.     The one-year non-compete period put in place is not only reasonable in its temporal and geographical scope, given that he had nationwide high level responsibility for audiology products, programs, and services with One Call, the enforcement of his post-employment obligations are necessary to prevent substantial harm to One Call's goodwill, existing contractual and business relationships, business opportunities, and standing in this highly competitive industry.

## JURISDICTION AND VENUE

22.     Plaintiff One Call is a Delaware corporation with a principal place of business at 841 Prudential Drive, Suite 900, Jacksonville, Florida 32207.

23.     For diversity purposes, One Call is a corporate citizen of the States of Florida and Delaware.

DM2\6437556.1

24.     Defendant, Jordan Burch, is an individual and a citizen of the State of Oregon, whose last known to reside at 1891 Radcliffe Court, West Linn, Oregon, 97068.

25.     This Court has jurisdiction under 28 U.S.C. § 1332(a) because One Call and Burch are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

26.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and a substantial part of the property, intellectual or otherwise, that is subject to One Call's claims is situated here, where One Call is headquartered.

27.     Venue and jurisdiction are also appropriate pursuant to the parties' express agreements.

28.     Pursuant to the Confidentiality, Unfair Competition, Non-Solicitation, and Invention Assignment Agreement (hereafter the "2014 Agreement"), entered into by the parties, Burch has consented to venue in and jurisdiction of this Court and to exclusive venue in and jurisdiction of courts within the State of Florida:

> **Governing Law.** Florida (the "State") law shall control in the interpretation and application of this Agreement without regard to any choice of law principals of the State. I [Burch] consent to the exclusive jurisdiction of the courts located in the State, and agree that the State is the proper forum and venue for any legal action arising under this Agreement.

*See* the 2014 Agreement, a copy of which is attached hereto and incorporated by reference as Exhibit "A," ¶ 14 (emphasis in original); *see also* Confidentiality and Noncompetition Agreement (the "2011 Agreement"), Exhibit "B," ¶ 9 ("The parties to

this Agreement agree that any suit, action or proceeding arising out of or relating to this Agreement … shall be brought … in the U.S. District Court for the Middle District of Florida, Jacksonville Division.").

29.     Throughout his employment with One Call, Burch regularly traveled to locations throughout the United States, including to One Call's principal place of business in Jacksonville, Florida, and had regular and systematic contacts with the State of Florida, including One Call's Jacksonville office for training and company meetings.

## FACTUAL BACKGROUND

### One Call's Business

30.     One Call is the nation's leading provider of specialized cost containment products, programs, and services to the workers' compensation industry.

31.     The cost containment market in which One Call conducts business is highly competitive.

32.     One Call helps its customers – like third party payers (such as state funds, insurance carriers, third party administrators, managed care organizations, and case management companies) and self-insured employers – achieve faster, more efficient, and more cost-effective resolution of claims.

33.     Through its service and product offerings, including audiology products and services, complex care and home health services, equipment, and devices, high-end diagnostic procedures, dental and doctor programs, physical medicine and physical therapy services, transportation and language services, and other medical specialties, One Call provides its customers with consistent connections to care and improved outcomes.

6

34.     Attached as Exhibit "C" is an excerpt from One Call's website, reflecting its product and service offerings, which are the same as the products and services One Call offered at the time of Burch's departure from One Call.

35.     In addition, One Call builds solid relationships within the health care community to develop a nationwide network of providers and vendors.

36.     Through these relationships, One Call delivers integrated best-in-class care throughout the life cycle of the claim.

37.     The three components of One Call's innovative approach are:

    a.   Strong national specialty networks with prompt access to high quality specialty providers via easy-to-use connections for claims management: One Call credentials these best-in-class providers, matches the injured worker with the right provider, ensures the timely movement of critical data and reports, and simplifies the reimbursement process.

    b.   Sophisticated analytics that identify high performing workers' compensation physicians and specialists:  With quality physicians guiding the case, many oversight activities such as utilization review and total claims management can be minimized taking cost, time, and friction out of the claims management process.

    c.   Technology that connects these formerly fragmented players into a virtual integrated team wrapped around the injured worker.

38.     Among other programs, products, and services, One Call offers an innovative audiology program and services and products designed to assist claim

professionals with the entire process of managing claims involving the ear and providing cost-effective hearing aids and accessories.

39.     One Call offers hearing aid products from the following manufacturers: Widex, Phonak, Siemens, Oticon, Starkey, Resound, Nu Ear, Rexton, Bernafon, Miracle Ear, Beltone, and others.

### Burch's Employment with One Call

40.     Burch began his employment with One Call in September 2011, as a National Sales Director of Audiology Products and held that position through his departure on October 31, 2015.

41.     Upon information and belief, before Burch joined One Call, Burch had no experience in the cost-containment or workers' compensation industry.

42.     One Call trained him in this industry from the ground-up.

43.     When Burch joined One Call, One Call trained him in Workers' Compensation, Durable Medical Equipment (DME), One Call's Provider Network and how to utilize it, One Call's operational, contracting, and pricing strategies, and how to promote One Call products to its customers within the workers' compensation space.

44.     One Call also provided Burch with its customer data, built a One Call business plan with him, and provided him with the resources necessary to perform his job.

45.     As part of his duties with One Call, Burch regularly attended training and meetings at One Call's Jacksonville, Florida office.

### *Burch's Extensive Contact with Key One Call Customers and Access to One Call's Goodwill*

46.     As a National Sales Director of Audiology Products, Burch had responsibility for key One Call customers and accounts across the country.

47.     Burch, along with his co-Sales Director, shared responsibility for approximately 700 One Call customer locations nationwide, including One Call's largest audiology customers.

48.     Burch was responsible for managing, supporting, and fostering key customer relationships across the One Call enterprise, with a subject matter expertise in One Call's audiology programs, products, and services.

49.     Burch was responsible for, *inter alia*:

   a.   making regular client sales calls to existing and potential clients in a consultative role, and to develop relationships;

   b.   developing new business relationships while maintaining One Call's current client base;

   c.   contacting new referral sources proactively to establish relationships;

   d.   following up on client leads;

   e.   identifying new prospects and revenue opportunities for One Call programs, products, and services through referrals, lead lists, referrals from current customers, and self-sourcing;

   f.   developing and executing strategies for promoting and selling One Call's audiology programs, products, and services to customers nationwide;

g.  achieving budgeted referral or revenue goals, and devising One Call business plans for doing so;

h.  maintaining long- and short-range sales and marketing plans for his assigned territory;

i.  facilitating and hosting meetings and product service training (known as CEUs) for client claims offices;

j.  preparing client proposals, letters, and presentations for One Call audiology programs, products, and services;

k.  making recommendations for new, enhanced, or improved One Call product, program, and service offerings;

l.  establishing and negotiating pricing for One Call's audiology programs, products, and services;

m.  establishing relationships with key internal business partners;

n.  providing overview of clients, including current partners, support options, cross-selling abilities, and partnership needs;

o.  developing in-depth knowledge of products, programs, value-added services, and pricing models of targeted customers;

p.  supporting all company product lines;

q.  demonstrating product, program, and service knowledge, including various solutions, markets, and competitive intelligence;

r.  utilizing available resources to ensure that the customer is properly setup on the One Call system;

DM2\6437556.1

s.   providing management with regular reports and updates, both written and

oral, outlining prospect status, revenue and deal count achievement,

partnership successes with various line of business partners, and campaign

successes; and

t.   notifying conversion and/or customer solutions management teams on

opportunities that need to be assigned or supported.

50.     Burch often worked hand-in-hand with other One Call employees, including its Regional Directors, to promote and deliver audiology products, programs, and services to, deliver presentations and proposals to, and negotiate contracts, pricing, and terms with key One Call customers and accounts across the country.

51.     Burch also served as One Call's subject matter expert on the sale and service of audiological products, including hearing aids.

52.     Burch routinely prepared PowerPoint presentations, proposals, pricing, marketing and promotional materials, informational pieces, client training materials, and other documents and materials designed to educate insurance carriers, third party administrators, state funds, managed care organizations, case management companies, and self-insured employers about the audiological and hearing aid products and services offered by One Call, and regularly facilitated and hosted training sessions for client claims managers.

53.     The goodwill generated in promoting and selling one service to a customer is used to promote all other services because the customer targets and decision-makers are generally the same across product/service lines.

54.     Accordingly, Burch was responsible for promoting One Call products and services for the entire enterprise, and to execute One Call growth across product categories.

55.     One Call approaches its customers on a team basis.  As such, Burch worked hand-in-hand with other sales personnel, including Regional Sales Directors, to capitalize on expertise, relationships, and synergies.

56.     In his role as a One Call Sales Director, at One Call's expense, Burch maintained regular, in some cases daily or weekly, contact with the key customers for which he was responsible and became the "face" of One Call for those customers and prospects – in particular for audiology products, programs, and services.

57.     Among other customers, Burch had direct responsibility for  promoting, proposing, negotiating, and delivering audiological programs, products, and services to the California State Compensation Insurance Fund (the "Fund") and Matrix Absence Management, Inc. ("Matrix").

58.     The Fund is California's largest worker's compensation insurance provider and a key customer of One Call.

59.     The Fund has an extensive application, selection, and approval process for companies, such as One Call, to become approved suppliers.  First a vendor must become an approved supplier to the Fund.  Once a vendor is approved as a supplier by the Fund, the second step requires a referral for the product from a physician, healthcare provider, benefit manager, etc. for an audiological or hearing aid product.  Once the referral is reviewed and approved by the Fund, the Fund approves distribution of the product to its

insured under its workers' compensation insurance program. One Call then sources the approved product from one of the many providers in the One Call network. One Call pays the network provider for the product at the contracted rate with the provider and then receives reimbursement from the Fund in accordance with the One Call contract with the Fund.

60.    Matrix is a nationwide company partnering with employers to provide customized management of benefit programs.

61.    Burch was intimately involved with, and oversaw all aspects of One Call's audiological programs, products, and services, with respect to the Fund and the individuals insured by the Fund, and with respect to Matrix.

62.    Burch was directly involved in promoting, proposing, negotiating, and delivering One Call audiology products to the Fund and Matrix and, due to the extent of the One Call goodwill he garnered with the client, made recommendations for other lines of business with the Fund and Matrix.

63.    Burch regularly attended monthly consultative meetings with key decisionmakers at the Fund and Matrix, and presented training to the Fund's and Matrix's claims staff.

### *Burch's Exposure to One Call's Confidential, Proprietary, and Trade Secret Information*

64.    As a Sales Director, and in his high-level role servicing One Call's key accounts, Burch gained access to One Call's highly confidential information, including, but not limited to:

DM2\6437556.1

a.  Audiology pricing, pricing strategy, discount strategies and policies, special pricing terms, and pricing margins;

b.  sales history;

c.  sales plans, projections, and strategy;

d.  budgeted revenue, including by customer, location, and line of business;

e.  actual sales revenue, including by customer, location, and line of business;

f.  sales trends, including by customer, location, and line of business;

g.  customer information, including:

    i.  client profiles;

    ii.  sales and transaction history;

    iii.  business and contract terms, pricing arrangements, and special arrangements;

    iv.  discount arrangements;

    v.  customer and decision-maker preferences, likes, and dislikes;

    vi.  purchasing and servicing requirements;

    vii.  One Call strengths and weaknesses with its customers;

    viii.  service-related inquiries;

    ix.  sales-related inquiries;

    x.  client engagement plans;

    xi.  One Call strategic plans;

    xii.  profitability variables and considerations;

    xiii.  account evaluations and strategies;

14

       xiv.   future business plans;

h.   One Call business terms and transactions;

i.   One Call business, financial, and operational strengths and weaknesses;

j.   One Call commission plans;

k.   business efficiencies;

l.   provider credentialing process;

m.   provider network details; and

n.   other business and customer-related information that provides One Call with a significant advantage or "head start" over its competitors who do not have and could not readily, if ever, obtain that information.

65.   One Call expended, and continues to expend, enormous resources to develop the confidential information created in connection with the development of its business, sales, and customer and provider relationships, including, but not limited to:

a.   investing large amounts of employee time to create business strategies and prepare and negotiate contract terms;

b.   developing pricing and promotion strategies;

c.   conducting account reviews;

d.   synthesizing and analyzing sales data;

e.   adding business lines with synergies to One Call's existing business;

f.   engaging and paying consultants to provide business recommendations and other insights; and

g.   developing and implementing internal training of employees.

DM2\6437556.1

66.     Burch (and other employees like him) agreed and acknowledged that One Call:

> Has provided me with one or more of the following: specialized training; knowledge of its business, Confidential Information … , customers and other valuable and confidential business information; and/or, an opportunity to deal with, and develop goodwill with, its customers and prospective customers, suppliers, and employees. The Company wishes to protect its Confidential Information, training investment, good will, and business relationships.

*See* the 2014 Agreement, Exh. A, ¶ 1.b; *see also id.* at ¶ 4.a; 2011 Agreement, Exh. B, at ¶ 1.

67.     Burch further agreed and acknowledged that: "[I] have been be placed in a special position of trust and confidence that includes knowledge, training, and business contacts that would give me an unfair competitive advantage if no limitations were placed on my post-employment activities." *Id.* at ¶ 1.b.

68.     In the course of his employment with One Call, Burch had access to and regularly received highly confidential and proprietary information, such as information on customers, customer preferences, proposals and bids, pricing, margins, and products.

69.     In the months prior to his departure, Burch led a key marketing initiative to expand One Call's presence and sales within certain areas his assigned area.

70.     This confidential and proprietary information – if it fell into the hands of competitors – could significantly harm, if not destroy, One Call's competitive advantages in the sale of audiological and hearing aid products and services in the workers' compensation market.

**One Call's Protection of its**
**Confidential, Proprietary, and Trade Secret Information**

71.     One Call employs significant measures to protect its confidential,

proprietary, and trade secret information, including requiring employees with access to

such information to sign non-competition and confidentiality agreements.

72.     Confidential information is password-protected through One Call's

computer system.

73.     In addition, One Call has agreements and policies in place that make clear

to employees that confidential information must be safeguarded and not used or disclosed

outside of One Call.

74.     The 2014 Agreement provides:

> I understand that Confidential Information is
> defined as any item of information, or a compilation
> of information, in any form (tangible or intangible),
> related to the Company's business that Company
> has not made public or authorized public disclosure
> of, and that is not generally known to the public
> through proper means.   Confidential Information
> will not lose its protected status under this
> Agreement if it becomes generally known to the
> public or to other persons through: improper means
> such as the unauthorized use or disclosure of the
> information by me or another person. Confidential
> Information protected under this Agreement
> includes any and all information concerning the
> Workers' Compensation administrative services, the
> processes and business methods developed by the
> Company with regard to its services, products, any
> research or development and test results concerning
> the Company's services, products, business
> methods and processes, information concerning
> patents pending, specifications, new materials
> research, pending projects and proposals, any cost,
> pricing or ther financial data or projections,

> including, without limitation, pricing strategies and plans, scientific, formulae, and prototypes. marketing plans and surveys, sales tactics and plans, business plans, strategies, forecast; projects in development, unpublished financial information, profitability information, forms,, transaction documents, budgets, supplier lists, identities, characteristics, agreements, and methods, techniques of operation and private personnel information of the Company, in whatever form and whether or not such information is identified as confidential or proprietary. Confidential Information also includes the identities of the Company's customers and other information about those customers, including their requirements, the names of their decision-makers, and their contracts with the Company. I understand and agree that this is Confidential Information which the law treats as privileged, therefor protecting an employer from use without consent. Confidential Information shall include both information developed by me for the Company and information I obtained while in the Company's employ. All Confidential Information, whether created by me or other employees, shall remain the property of the Company.

2014 Agreement, Exh. A, ¶ 4(b).

75.     As part of the 2014 Agreement, Burch specifically acknowledged the value and importance of One Call's confidential, proprietary, and trade secret information:

> During my employment and at any time after the termination of my employment, I agree to hold all Confidential Information in trust and confidence and not to engage in an unauthorized use or disclosure of all Confidential Information. I shall not, without written consent of [One Call] publish or use, disclose, disseminate, or identify by topic or subject, to anyone other than authorized [One Call] personnel any Confidential Information. I agree to abide by the [One Call] policies and regulations for the protection of its Confidential

> Information and I understand and agree that the unauthorized disclosure or misuse of such Confidential Information could irreparable damage [One Call].

2014 Agreement, Exh. A, ¶ 4.c; *see also* 2011 Agreement, Exh. B. at ¶ 1.

76.     Burch further acknowledged and agreed to return all confidential information to One Call upon the termination of his employment:

> All correspondence, memoranda, records, databases, reports, documents, equipment, digitally-stored information or other property received or made by me in connection with my employment are the exclusive property of [One Call]. Upon termination of my employment with [One Call] for any reason whatsoever, or upon request by the Company, I will immediately return to Company any and all Confidential Information and any and all information and materials relating to [One Call's] business, products, personnel, suppliers or customers, whether or not such material is deemed to be confidential or proprietary. Thereafter, any continued possession will be deemed to be unauthorized. I shall not retain any copies of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents in any form whatsoever (including information contained in computer memory or on any computer disk) relating in any way to the affairs of [One Call] and which were entrusted to me or obtained by me at any time during my employment with [One Call].

*See* 2014 Agreement, Exh. A at ¶ 11; 2011 Agreement, Exh. B at ¶ 2.

77.     One Call's Employee Handbook, which Burch received**,** also makes clear that employees must protect, not use on behalf of anyone but One Call, or disclose outside of One Call, One Call's confidential, proprietary, and trade secret information:

<u>Security and Proprietary Information</u>

> 1.     The user interface for information contained on Internet/Intranet/Extranet-related systems should be classified as either confidential or not confidential. Examples of confidential information include but are not

limited to: Company private, corporate strategies, competitor sensitive, trade secrets, specifications, customer lists, and research data. Employees should take all necessary steps to prevent unauthorized access to this information.

2. Keep passwords secure and do not share accounts. Authorized users are responsible for the security of their passwords and accounts. User level passwords should be changed every 90 days.

3. All PCs, laptops and workstations should be secured with a password-protected screensaver with the automatic activation feature set at 15 minutes or less, or by logging-off when the system will be unattended.

4. Because information contained on portable computers is especially vulnerable, special care should be exercised.

***

6. All systems used by the employee that are connected to the One Call Internet/Intranet/Extranet, whether owned by the employee or One Call, shall be continually executing approved virus-scanning software with a current virus database.

7. Employees must use extreme caution when opening e-mail attachments received from unknown senders, which may contain viruses, e-mail bombs, Trojan horse code, phishing attacks, hyperlinks to unsavory websites etc.

### Unacceptable Use

The following activities are, in general, prohibited. Employees may be exempted from these restrictions during the course of their legitimate job responsibilities (e.g., systems administration staff may have a need to disable the network access of a system if that system is disrupting production services).

The lists below are by no means exhaustive, but attempt to provide a framework for activities which fall into the category of unacceptable use.

<u>Prohibited Activities</u>

\*\*\*

5.      Revealing your account password to others or allowing use of your account by others. This includes family and other household members when work is being done at home.

\*\*\*

9.      Effecting security breaches or disruptions of network communication. Security breaches include, but are not limited to, accessing data of which the employee is not an intended recipient or logging into a server or account that the employee is not expressly authorized to access, unless these duties are within the scope of regular duties . . .

10.      Port scanning or security scanning is expressly prohibited unless prior notification to One Call is made.

11.      Executing any form of network monitoring which will intercept data not intended for the employee's system, unless this activity is a part of the employee's normal job/duty.

12.      Circumventing user authentication or security of any system, network or account.

\*\*\*

15.      Providing information about, or lists of, One Call employees to parties outside One Call.

\*\*\*

17.      Inserting/attaching unauthorized floppies, cd/dvd's, USB drives, memory sticks or cameras to the One Call systems . . .

\*\*\*

21

[In social media, the employee must m]aintain the confidentiality of One Call trade secrets and private or confidential information. Trade secrets may include information regarding the development of systems, processes, products, know-how and technology. [] not post internal reports, policies, procedures or other internal business-related confidential communications.

*** 

<u>Standards of Conduct</u>

***

The following is not a complete list but is illustrative of those offenses that may result in immediate termination.

***

6.      Stealing, misappropriating, or intentionally damaging property belonging to One Call or its customers or Employees.

***

8.      Unauthorized use of One Call's or its clients' funds, equipment, vehicles or property.

***

12.      Failure to maintain confidentiality of customer or Employee information, or of trade secrets or confidential information of One Call.

Excerpts from One Call Employee Handbook, Apr. 2013 ed., attached as Exhibit "D."

78.      One Call protects and limits access to certain confidential information by distributing it to employees only on a "need-to-know" basis and instructing them not to distribute the information further.

79.      One Call takes many other measures to protect its confidential information and trade secrets, including password protecting its computers, databases, and files

containing confidential information and trade secrets, limiting remote access to data, maintaining security at its facility, labeling certain documents and data as "CONFIDENTIAL" or with similar markings, providing training to its employees to educate them on One Call's policies and procedures governing the protection of confidential information and trade secrets, and cultivating a culture where confidential information and trade secrets belonging to One Call are viewed as one of its most significant assets. The protection of One Call's confidential information and trade secrets is an organizational imperative.

### Burch's Post-Employment Contractual Obligations

80.     As a condition of employment and continued-employment with One Call and eligibility for certain bonus plans, One Call requires that all employees, specifically those involved in sales like Burch, execute an agreement, in which the employee agrees, *inter alia*, not to compete, directly or indirectly, with One Call for a period of one year, and not to disclose or retain any of One Call's confidential, proprietary, or trade secret information.

81.     Burch understood, acknowledged, and agreed that, during his employment at One Call and for a period of one year after termination of his employment, he was subject to certain restrictions.

82.     At the outset of his employment, Burch signed the Confidentiality and Noncompetition Agreement (Exh. B, referred to throughout this document as the "2011 Agreement").

83.     In 2014, Burch reaffirmed his post-employment obligations in the

Confidentiality, Unfair Competition, Non-Solicitation and Invention Assignment

Agreement (Exh. A, incorporated by reference, and referred to throughout this document

as the 2014 Agreement").

84.     Burch agreed as follows:

(1) No Conflicting Business Activities. I will not provide
services directly or indirectly, for the benefit of a
Competitor in any role or position (as an employee,
consultant, or otherwise) that would involve Competitive
Business Activities within the Restrictive Area.

(2) No Interference of Customers. I will not (in person or
through assistance to others) accept business from, or
provide services to, any Covered Customer of [One Call] in
pursuit of a Competing Line of Business.

(3) No Solicitation of Customers. I will not (in person or
through assistance to others) solicit or attempt to solicit or
attempt to solicit or communicate with or call on any
Covered Customer of [One Call] in pursuit of a Competing
Line of Business.

(4) No Solicitation of Employees. I will not (in person or
through assistance to others) knowingly participate in
soliciting or communicate with a [One Call] Employee for
the purpose of persuading or helping the [One Call]
Employee to end or reduce his or her employment
relationship with [One Call] if I either worked with that
[One Call] Employee or received Confidential Information
about that [One Call] Employee in the last two years of my
employment.

(5) No Solicitation of Suppliers. 1 will not (in person or
through assistance to others) knowingly participate in
soliciting or communicating with a Company Supplier for t
e purpose of persuading or helping that Supplier to end or
modify to [One Call's] detriment an existing business
relationship with [One Call] if I either worked with that

Supplier or received Confidential Information about that …
Supplier in the last two years of my employment.

(6) No Solicitation of Network Providers. I will not (in
person or through assistance to others) solicit or attempt to
solicit or attempt to solicit or communicate with or call on
any Network Providers of [One Call] in pursuit of a
Competing Line of Business.

*See* 2014 Agreement, Exh. A, ¶¶ 5.a(1)-(6) (underlining in original); *see also* 2011

Agreement, Exh. B, at ¶ 3 (one year non-competition covenant), ¶ 4 (one year non-

solicitation of employees covenant), and ¶ 5 (one year non-solicitation of customers

covenant).

85.     Burch further acknowledged and agreed to provide One Call with notice

of any activity that could potentially violate his post-employment obligations during the

non-compete period:  "I will promptly give written notice to the senior Human Resources

manager for [the One Call Business Sector], and will provide [One Call] with the

information it needs about my new position to determine whether such position would

likely lead to a violation of this Agreement[.]"  *See* 2014 Agreement, Exh. A, ¶ 5.d.

86.     Burch was well compensated.  Burch received a substantial annual base

salary, plus commissions and benefits.

87.     During his four years with One Call, Burch earned total salary, bonus, and

commission in excess of $760,000, plus benefits.

**Burch Has Breached His Non-Compete and Non Solicitation
Obligations Since His Departure from One Call**

88.     Burch's employment with One Call ended on October 31, 2015.

89.     At all times, One Call reminded him that he remained bound by the
confidentiality covenants and one year non-solicitation and non-competition covenants to
which he had already agreed and to which he was already bound.

90.     Although Burch failed to disclose it to One Call (as he was required to do
under Section 5.d of the 2014 Agreement), One Call recently discovered that Burch has
accepted employment with, or is acting directly or indirectly as a consultant and/or agent
of AHP.

91.     According to AHP's website, AHP, like One Call, offers programs for
audiological products and services, including the sale and service of hearing aids,
targeted to individuals insured by workers' compensation insurance providers.

92.     For example, according to its website, AHP purports to offer the following
services:

> **Cost Containment:**  AHP uses current relationships with
> manufacturers to provide the lowest possible price while
> retaining high quality products.
>
> **Assumption of Administrative Burden:**  AHP staff
> members have extensive hearing healthcare experience.
> This understanding allows us to streamline processes and
> handle every aspect of the claim. When you make the
> referral, we assume all of the administration of the hearing
> healthcare claim.
>
> **Stable Service Standards:**  AHP has credentialing and
> interview systems to ensure consistent comprehensive
> fitting and verification services.

DM2\6437556.1

**Product and Package Symmetry:** Every hearing instrument has the same warranty, insurance coverage, and all-inclusive comprehensive follow-up care.

**Appropriate Fittings:** Our Hearing Healthcare Providers are reimbursed at the same industry leading rate regardless of which technology level the claimant is fit with. This ensures the patient is receiving the proper equipment that they need, and not excessive, unnecessary or extravagant technology.

**Automatic Peer Review:** Every hearing aid claim goes through peer review with our qualified Board Certified Hearing Instruments Specialists and Audiologists

93.    The provision of these services by AHP directly and/or indirectly compete with the audiology products, programs, and services offered by One Call.

94.    As stated on AHP's own website, product costs and competitive pricing are an integral component for success in this market/industry.

95.    According to its website, AHP promotes hearing aid products from the following manufacturers: Phonak, Siemens, Starkey, Oticon, Resound, Audifon, and Widex.

96.    AHP sells hearing aid products from the same manufacturers (with the exception of Audifon) that are sold by One Call.

### The Fund

97.    On December 19, 2015, an email, apparently intended to be sent to Burch at his AHP email address, was sent to Burch at his One Call address (jordan_burch@onecallcm.com).

98.    The jordan_burch@onecallcm.com email is automatically forwarded to Burch's former One Call manager.

99.    The email chain reveals that AHP has given Burch an AHP email address (jburch@yourhearingprovider.com) to conduct business directly or indirectly for or on behalf of AHP.

100.    As explained above, AHP is a competitor of One Call.

101.    The email chain also reveals that Burch, either on behalf of himself or AHP, was attempting to work with Cypress Care, including with respect to the Fund.

102.    In particular, the email reveals that Burch was setting up a call between a Claims Manager at the Fund, the Vice President of Specialty and Clinical Managed Care Sales for Cypress Care, and Burch.

103.    Cypress Care is a direct competitor of One Call.

104.    During Burch's employment with One Call, and now, One Call's biggest competitor, with respect to being on an approved panel for the Fund, and with respect to obtaining referrals from providers and claims managers once approved, is Cypress Care.

105.    According to its website, "Cypress Care provides workers' compensation and auto insurance carriers, third party administrators (TPAs), managed care organizations (MCOs), government agencies and self-insured employers with outcomes-focused, customer-driven solutions."

106.    As explained above, Cypress Care is a competitor of One Call.

107.    Upon information and belief, Burch, for and/or on behalf of AHP, is working in conjunction with Cypress Care to sell AHP's and/or Cypress Care's hearing aid products – the same hearing aid products distributed and sold by One Call – to individuals receiving workers' compensation insurance provided by the Fund.

108.    Upon information and belief, Burch has solicited, directly or indirectly, existing or prospective customers of One Call on and/or behalf of AHP and/or Cypress Care.

109.    The email demonstrates that Burch had already solicited, and was continuing to solicit, the Fund – an existing customer of One Call with whom he had extensive involvement for One Call – for or on behalf of Cypress Care as an employee, agent, or consultant of AHP or himself in December 2015 – over a month after the termination of his employment with One Call and during the restrictive covenant period.

*Matrix*

110.    During his employment with One Call, Burch worked closely with the local One Call account executive to propose, negotiate, and provide One Call's audiology programs, products, and services to Matrix.

111.    During Burch's employment with One Call, Burch regularly called on and met with Matrix, including its key decisionmakers, and the local account executive.  In addition to proposing, negotiating, and providing audiology programs, products, and services to Matrix, Burch provided regular training to Matrix, all at One Call's expense.

112.    On January 7, 2016, One Call's account executive visited Matrix's office. During her visit, she learned that Burch had recently contacted a key Matrix decisionmaker and asked him for a lunch meeting to discuss AHP's hearing program.

113.    Burch represented to the customer that he is the Vice President of AHP.

114.    When a One Call employee spoke to Burch later that same day, however, he misrepresented to her that he was still unemployed and looking for work.

115.    That statement was false and designed to hide his work in competition with One Call and solicitation of One Call's customers, like Matrix and the Fund.

116.    One Call, AHP, and Cypress Care target the same customer base:  third party payers (such as insurance carriers, third party administrators, state funds, managed care organizations, and case management companies) and self-insured employers.

117.    One Call, AHP, and Cypress Care target the same customer base:  third party payers (such as insurance carriers, third party administrators, state funds, managed care organizations, and case management companies) and self-insured employers.

118.    Thus, not only is Burch conducting business and sales activities in the worker's compensation healthcare industry – an area to which he was exposed and bore responsibility on behalf of One Call – he is also selling competing products and services that go hand-in-hand with the same products and services for which he was a core subject matter expert at One Call, to the very same customers and customer base.

119.    Burch was intricately involved in the bidding and courting process One Call undertook to become an approved supplier to the Fund and Matrix and has intimate knowledge of the products, programs, and services One Call offers to the Fund and Matrix and, more importantly, the prices of and margins for those products, programs, and services.

120.    With this "inside" information in hand, Burch is now going to the Fund and Matrix, and likely others, to make proposals for the same products, as many of the hearing aid products sold by One Call and AHP come from the same manufacturers.

121.    Simply put, Burch has the "playbook" on how to unfairly compete against One Call and his recent conduct unequivocally demonstrates that he is, and is intending to, use it in violation of his post-employment obligations.

122.    In his new role with AHP and/or Cypress Care, in selling competing services to the same customers, including the Fund, Burch is also trading on the goodwill and confidential information in which One Call invested years of time, effort, and expense.

123.    In his new role with AHP and/or Cypress Care, Burch is violating the contractual and legal obligations owed to One Call.

124.    He is working for a direct competitor; selling and promoting products and services in competition with One Call, including hearing aid products and services he was responsible for selling and promoting at One Call.

125.    Moreover, Burch has solicited, and continues to solicit and service, the very same customers and decision-makers for whom he was responsible at One Call.

**Burch Has Breached His Obligation Not to Remove Any, and to Return All, Confidential, Proprietary, and Trade Secret Information**

126.    In the months preceding Burch's departure from One Call, Burch began forwarding to his personal email account and otherwise retaining One Call's confidential and proprietary information and/or trade secrets without the authorization, knowledge, and/or permission of One Call.

127.    Burch's access and retention of this information provided no benefit to One Call and was not in furtherance of any legitimate One Call business purpose presently known to One Call.  The inevitable conclusion is, of course, that Burch

31

accessed and retained this information for the purpose of using it in a manner that competes with, or otherwise undermines, One Call's business or may have provided it or disclosed it to the One Call competitors with whom he is working, such as AHP and Cypress Care.

128.    For example, on August 18, 2015, Burch forwarded, to his personal Gmail account, a One Call email he received from Jon Nau, the other One Call Audiology Sales Director,  to which One Call's Audiology and Hearing Program Business Plan was attached.

129.    This One Call business plan document contains highly sensitive and proprietary information on One Call's business objectives, opportunities, information about competitors and competitive threats, marketing goals, and issues related to insureds and workers' compensation insurance providers.

130.    None of the information forwarded by Burch to his personal email account is available to the general public or One Call's competitors, such as AHP and Cypress Care.

131.    The disclosure or the threat of disclosure of the documents and information forwarded to Burch's personal email account to a competitor of One Call, such as AHP and/or Cypress Care, will severely harm and/or compromise One Call's competitive advantages in the workers' compensation market, in particular, the audiological and hearing aid market, advantages that One Call has acquired through many years and millions of dollars in expense.

132.    Burch did not return this and other misappropriated confidential information upon the termination of his employment, as required to do so under Section 11 of the 2014 Agreement and Section 2 of the 2011 Agreement.

### The Harm Caused and Further Threatened by Burch

133.    The use of the training and goodwill of One Call, and the disclosure or threat of disclosure of One Call's confidential, proprietary, and trade secret information to a competitor, such as AHP and/or Cypress Care, will severely harm One Call's competitive advantage in the workers' compensation insurance industry, and, in particular, the audiological and hearing aid market, and compromise the advantages that One Call has acquired through many years and millions of dollars spent in building goodwill, customer relationships, and developing sales and marketing strategies.

134.    Burch's decision to act as an employee, consultant, and/or agent of AHP and/or Cypress Care, through which he has used or disclosed and/or will inevitably use or disclose, One Call's confidential information and trade secrets, and has drawn upon One Call's goodwill, was done intentionally and maliciously without the knowledge, consent or permission of One Call.

135.    As stated above, Section 5.d of the 2014 Agreement contractually obligated Burch to provide written notice of any activity that could potentially violate his post-employment obligations during the non-compete period.  He did not.

136.    Burch cannot act as an employee, consultant, and/or agent for AHP and/or Cypress Care without utilizing and/or disclosing One Call's confidential, proprietary, or trade secret information and drawing upon One Call's goodwill.

DM2\6437556.1

137.    Burch cannot simply erase from his memory the detailed information he obtained over many years as One Call's Audiology Sales Director, when One Call trained him from the ground-up.  Neither can Burch ignore the information he possesses regarding confidential information such as One Call's pricing and cost structures, product level margins, detailed customer information and sales and marketing strategies.  Burch will inevitably bring with him and disclose to One Call's competitors the following confidential information:  (i) potential customers One Call has targeted and will target in the coming year; (ii) market growth opportunities; (iii) One Call's strengths and weaknesses with its customers; (iv) specific products, vendors, and arrangements with third parties that may increase profitability or affect customer pricing; (v) One Call's pricing structure and pricing methodology; and (vi) other information which, collectively, will result in One Call's competitors being able to shortcut what it has taken One Call years of labor and expense to build.

138.    Burch's breach of his contractual and legal obligations have caused, and will continue to cause, One Call irreparable harm, including:

a.   an unquantifiable loss of sales and profits;

b.   loss and diminution of client relationships;

c.   loss and diminution of provider relationships;

d.   the immediate and direct accessibility of One Call's institutional knowledge, margins and pricing structure, business strategies, and other practices to its customers and providers;

e.   loss and diminution of client confidence, trust, and goodwill; and

      f.   loss of confidential, proprietary, and trade secret information.

139.    Unlike the irreparable harm One Call will suffer if Burch is not enjoined, Burch will suffer no irreparable harm if enjoined.

140.    AHP and Cypress Care will still be able to compete against One Call legitimately – without the ill-gotten shortcut of One Call's goodwill and confidential, proprietary, and trade secret information, and by respecting the one-year "stand-down" period against Burch's competition with One Call.

141.    Pursuant to Section 5.d of the 2014 Agreement and Section 11(h) of the 2011 Agreement, One Call is entitled to recovery of its attorneys' fees and costs incurred in obtaining the relief sought.

142.    Pursuant to Section 5.d of the 2014 Agreement, One Call is entitled to have the restrictive covenants extended by one day for each day Burch is found to have violated them, up to a maximum of one year.

## COUNT I – BREACH OF CONTRACT (NON-COMPETE)

143.    Paragraphs 1 through 142 of the Verified Complaint are incorporated herein by reference.

144.    The 2014 Agreement (as the 2011 Agreement) between One Call and Burch is a valid and enforceable agreement.

145.    Burch agreed that, during his employment with One Call, and for one year thereafter, he would not "provide services directly or indirectly, for the benefit of a Competitor in any role or position (as an employee, consultant, or otherwise) that would involve Competitive Business Activities within the Restrictive Area." *See* 2014

Agreement, Exh. A, ¶ 5.a(1) (the "2014 Non-Compete Covenant").  *See also* 2011

Agreement, Exh. B, ¶ 3 (the "2011 Non-Compete Covenant").

146.   AHP is a competitor of One Call.

147.   Cypress Care is a competitor of One Call.

148.   The 2014 Non-Compete Covenant (as the 2011 Non-Compete Covenant)

protects One Call's legitimate business interests, including its:

a.   trade secrets;

b.   valuable confidential business or professional information, including its

confidential and proprietary information;

c.   substantial relationships with specific prospective or existing customers,

patients, or clients;

d.   customer, patient, and client goodwill.

149.   The 2014 Non-Compete Covenant (as the 2011 Non-Compete Covenant)

contained in the Agreement is reasonable in time, area, and scope.

150.   The 2014 Non-Compete Covenant (as the 2011 Non-Compete Covenant)

contained in the Agreement satisfies the requirements of Fla. Stat. § 542.335.

151.   Burch has breached his agreements with One Call, including the 2014

Non-Compete Covenant, by providing services, directly or indirectly, for the benefit of

AHP, in a role or position that would involve Competitive Business Activities within the

Restrictive Area, within the one year period after his departure from One Call.

152.   Burch has breached his agreements with One Call, including the 2014

Non-Compete Covenant, by providing services, directly or indirectly, for the benefit of

36

Cypress Care, in a role or position that would involve Competitive Business Activities within the Restrictive Area, within the one year period after his departure from One Call.

153.    Burch threatens to further breach his agreements with One Call, including the 2014 Non-Compete Covenant, by continuing to provide services, directly or indirectly, for the benefit of a One Call Competitor, including AHP and/or Cypress Care, in a role or position that would involve Competitive Business Activities within the Restrictive Area, within the one year period after his departure from One Call.

154.    Burch has also breached, and will breach, his agreements with One Call, including the 2014 Agreement by, within the restricted period, and for the purpose of competing with One Call, engaging in the solicitation and servicing of One Call customers, including, but not limited to:

    a.   One Call customers for whom Burch was responsible on behalf of One Call, including, but not necessarily limited to, the Fund and Matrix;

    b.   One Call customers concerning which Burch received access to One Call confidential information, including, but not necessarily limited to, the Fund and Matrix; and

    c.   One Call customers concerning which Burch, upon information and belief, retained, used, and/or disclosed One Call confidential information.

155.    Burch has further breached the 2014 Agreement by failing to provide One Call with written notice of intention to act for and/or on behalf of AHP and/or Cypress Care, as required by Section 5.d of the 2014 Agreement.

156.    Unless the relief requested herein is granted, Burch will continue, among other things, to: (a) unfairly compete with his former employer, One Call; (b) take advantage of the access to which One Call gave him to its valuable business relationships, goodwill, and confidential and proprietary business information; (c) solicit, have contact for competitive purposes with, or continue to do business for competitive purposes with, One Call customers, including, but not necessarily limited to, the Fund and Matrix, with whom he had contact on behalf of One Call, and concerning which he has, upon information and belief, retained, used, and/or disclosed One Call information; and (d) use, disclose, and/or draw upon the confidential and proprietary information to which he gained access at One Call, all in violation of Burch's contractual and legal obligations.

157.    Burch's breaches of contract are a direct and proximate cause of One Call's harm and damages.

158.    All conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

159.    Burch's acts alleged herein were performed without the consent of One Call.

160.    One Call has suffered, and will continue to suffer, damages, including irreparable harm, monetary damages, attorneys' fees, and costs, as a result of Burch's unlawful activities.

WHEREFORE, One Call respectfully requests that this Court grant One Call:

A.      temporary, preliminary, and permanent injunctive relief;

B.     enforcement of Burch's agreements with One Call as written (or, in the alternative, in the event that the Court determines that any restriction is overbroad, overlong, or otherwise not reasonably necessary to protect legitimate business interest, modification of the restraint and granting of the relief reasonably necessary to protect such interests);

C.     a ruling that the restrictive covenants in the 2014 Agreement have been extended by one day for each day for which Burch is found to have violated them, upon to a maximum of one year, pursuant to Section 5.d of the 2014 Agreement;

D.     actual and compensatory damages;

E.     exemplary damages;

F.     attorneys' fees and costs pursuant to Section 5.d of the 2014 Agreement or, alternatively, Fla. Stat. § 542.335(1)(k); and

G.     such other and further relief as the Court deems equitable, just, and proper.


## COUNT II – BREACH OF CONTRACT (NON-SOLICITATION)

161.    Paragraphs 1 through 160 of the  Verified Complaint are incorporated herein by reference.

162.    The 2014 Agreement (as the 2011 Agreement) between One Call and Burch is a valid and enforceable agreement.

163.    Burch agreed, during his employment with One Call, and for one year thereafter, to refrain from soliciting or servicing One Call's customers.

164.    Specifically, Burch agreed that he shall not:

(2) No Interference of Customers. I will not (in person or through assistance to others) accept business from, or provide services to, any Covered Customer of [One Call] in pursuit of a Competing Line of Business.

(3) No Solicitation of Customers. I will not (in person or through assistance to others) solicit or attempt to solicit or

> attempt to solicit or communicate with or call on any
> Covered Customer of [One Call] in pursuit of a Competing
> Line of Business.

*See* 2014 Agreement, Exh. A, ¶¶ 5.a(2)-(3) (underlining in original) (the "Customer

Covenants"). *See also* 2011 Agreement, Exh. B, ¶ 5 ("2011 Customer Covenants").

165.    Pursuant to Section 5.b of the 2014 Agreement, "Covered Customer"

means any customer who purchased services from the Company or was solicited by the

Company to purchase services if Burch either called upon or had business-related contact

with that Covered Customer or received Confidential Information about that Covered

Customer during the term of his employment.

166.    Burch also agreed that, during the same period, he "will not (in person or

through assistance to others) solicit or attempt to solicit or attempt to solicit or

communicate with or call on any Network Providers of [One Call] in pursuit of a

Competing Line of Business"  2014 Agreement, Exh. A, ¶ 5.a(6) (the "Network

Covenants").  (The 2014 Customer Covenants and Network Covenants are collectively

referred to herein as the "Non-Solicitation Covenants").

167.    The Non-Solicitation Covenants protect One Call's legitimate business

interests, including its:

    a.   trade secrets;

    b.   valuable confidential business or professional information, including its

       confidential and proprietary information;

    c.   substantial relationships with specific prospective or existing customers,

       patients, clients, and network providers;

> d.  customer, patient, client, and network provider goodwill.

168.  The Non-Solicitation Covenants are reasonable in time, area, and scope.

169.  The Non-Solicitation Covenants satisfy the requirements of Fla. Stat. § 542.335.

170.  Burch has breached, and will breach, his agreements with One Call, including 2014 Agreement and Non-Solicitation Covenants, by, within the restricted period, and for the purpose of competing with One Call, engaging in the solicitation and servicing of One Call customers, including, but not limited to:

> a.  One Call customers for whom Burch was responsible on behalf of One Call, including, but not necessarily limited to, the Fund and Matrix;
>
> b.  One Call customers concerning which Burch received access to One Call confidential information, including, but not necessarily limited to, the Fund and Matrix; and
>
> c.  One Call customers concerning which Burch, upon information and belief, retained, used, and/or disclosed One Call confidential information.

171.  Unless the relief requested herein is granted, Burch will continue, among other things, to: (a) unfairly compete with his former employer; (b) take advantage of the access that One Call gave him to its valuable business relationships, goodwill, and confidential and proprietary business information, and (c) solicit, have contact for competitive purposes with, or continue to do business for competitive purposes with, One Call customers, including the Fund and Matrix, with whom he had contact on behalf of

One Call, and concerning which he has misappropriated One Call information, all in violation of Burch's contractual and legal obligations.

172.    Burch's breaches of contract are a direct and proximate cause of One Call's irreparable harm and damages.

173.    All conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

174.    Burch's acts alleged herein were performed without the consent of One Call.

175.    One Call has suffered, and will continue to suffer, damages, including irreparable harm, monetary damages, attorneys' fees, and costs, as a result of Burch's unlawful activities.

WHEREFORE, One Call respectfully requests that this Court grant One Call:

A.    temporary, preliminary, and permanent injunctive relief;

B.    enforcement of Burch's agreements as written (or, in the alternative, in the event that the Court determines that any restriction is overbroad, overlong, or otherwise not reasonably necessary to protect legitimate business interest, modification of the restraint and granting of the relief reasonably necessary to protect such interests);

C.    a ruling that the restrictive covenants in the 2014 Agreement have been extended by one day for each day for which Burch is found to have violated them, upon to a maximum of one year, pursuant to Section 5.d of the Agreement;

D.    actual and compensatory damages;

E.    exemplary damages;

F.    attorneys' fees and costs pursuant to Section 5.d of the 2014 Agreement or, alternatively, Fla. Stat. § 542.335(1)(k); and

G.    such other and further relief as the Court deems equitable, just, and proper.

## COUNT III – BREACH OF CONTRACT
## (CONFIDENTIALITY, NON-RETENTION, NON-USE, AND NON-DISCLOSURE)

176.     Paragraphs 1 through 175 of the Verified Complaint are incorporated herein by reference.

177.     The 2014 Agreement (as the 2011 Agreement) between One Call and Burch is a valid and enforceable agreement.

178.     The 2014 Agreement (as the 2011 Agreement) required and continues to require Burch to return to One Call, and to refrain from using or disclosing, One Call's confidential, proprietary, and trade secret information.  *See* 2014 Agreement, Exh. A, ¶ 4. (*See also* 2011 Agreement, Exh. B, ¶¶ 1-2.)

179.     Upon information and belief, and based on the forwarding of information to his personal account, non-return of such information, and solicitation of one or more customers for whom he was responsible at One Call, Burch has breached, and will breach, his contractual obligations to One Call by forwarding, retaining, accessing, using, disclosing, and/or otherwise drawing upon, One Call's confidential and proprietary information, including the information described above, and information related to the Fund and Matrix, for the benefit of himself, AHP, and/or Cypress Care.

180.     Unless the relief requested herein is granted, Burch will, upon information and belief, and based on the foregoing circumstances, continue, among other things, to: (a) unfairly compete with his former employer; (b) take advantage of the access to which One Call provided him to its valuable confidential and proprietary business information, and (c) solicit, have contact for competitive purposes with, or continue to do business for

DM2\6437556.1

competitive purposes with, One Call customers with whom he had contact on behalf of One Call, including, but not necessarily limited to, the Fund and Matrix, and concerning whom he, upon information and belief, retained, used, and/or disclosed One Call information, all in violation of Burch's contractual and legal obligations.

181. Burch's breaches of contract are a direct and proximate cause of One Call's damages.

182. All conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

183. Burch's acts alleged herein were performed without the consent of One Call.

184. One Call has suffered, and will continue to suffer, damages, including irreparable harm, monetary damages, attorneys' fees, and costs, as a result of Burch's unlawful activities.

WHEREFORE, One Call respectfully requests that this Court grant One Call:

A. temporary, preliminary, and permanent injunctive relief;

B. enforcement of Burch's agreements as written;

C. actual and compensatory damages;

D. exemplary damages;

E. attorneys' fees and costs pursuant to Section 5.d of the 2014 Agreement; and

F. such other and further relief as the Court deems equitable, just, and proper.

DM2\6437556.1

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACTUAL AND PROSPECTIVE CONTRACTUAL RELATIONSHIPS

185.    Paragraphs 1 through 184 of the Verified Complaint are incorporated herein by reference.

186.    One Call has existing and potential contractual relationships with the customers that Burch has targeted and is targeting on behalf of a competitor (including himself, APH, and/or Cypress Care), including, but not limited to, the Fund and Matrix.

187.    Burch has knowledge of the existing and potential contractual relationships One Call has with existing and prospective customers, including, but not limited to, the Fund and Matrix.

188.    Burch's actions on behalf of, involvement with, and assistance to a competitor of One Call, AHP and/or Cypress Care, including his involvement in directly or indirectly assisting AHP and/or Cypress Care to divert business from One Call to AHP and/or Cypress Care, including the business of the Fund and Matrix, all in violation of Burch's contractual and legal obligations, has caused or may further cause an unfair diversion of contractual business relationships.

189.    Upon information and belief, Burch has assisted and/or will assist other competitors in soliciting and diverting business opportunities away from One Call intended to induce a breach or disruption of existing or potential contractual relationships, including with the Fund and its insureds and Matrix.

190.    One Call has a longstanding and positive relationship with the Fund and Matrix.

DM2\6437556.1

191.   Upon information and belief, it is highly likely that, but for the unlawful interference of Burch, the Fund and its insureds and Matrix would have and/or will continue to purchase hearing aid and related programs, products, and services, or more hearing aid programs, products, and services, from One Call.

192.   Upon belief, Burch has approached and continues to approach customers with whom One Call has existing contracts, as well as customers with whom One Call anticipates having future contracts, including the Fund and Matrix.

193.   By soliciting these existing and prospective customers, including the Fund and Matrix, on behalf of One Call's competitors while using knowledge of One Call's confidential, proprietary, and trade secret information, Burch has harmed and/or will imminently harm One Call's existing relationships with these customers and One Call's ability to enter into future relationships with these customers.

194.   Burch's unlawful and unjustified conduct has interfered with the performance of One Call's contractual relationship with its customers, including the Fund and Matrix.

195.   As a consequence of the foregoing, One Call has suffered and will continue to suffer damages, harm, and loss, including among other things, direct and/or potential financial losses, lost dealings and lost business opportunities.

196.   No privilege or justification exists on the part of Burch.

WHEREFORE, One Call respectfully requests that this Court grant One Call:

A.   temporary, preliminary, and permanent injunctive relief;

B.   actual and compensatory damages;

DM2\6437556.1

C.      exemplary damages; and

F.      such other and further relief as the Court deems equitable, just, and proper.

## COUNT V – TORTIOUS INTERFERENCE WITH
## ADVANTAGEOUS BUSINESS RELATIONSHIPS

197.    Paragraphs 1 through 196 of the Verified Complaint are incorporated herein by reference.

198.    One Call has a reasonable expectation of continued advantageous business relationships with its customers, including the customers for whom Burch was responsible on behalf of One Call, including the Fund and its insureds and Matrix.

199.    At all times relevant to this Verified Complaint, Burch was aware of One Call's advantageous business relationships with its customers, including, but not limited to, the other customers for whom Burch was responsible on behalf of One Call, including the Fund and its insureds and Matrix.

200.    Burch has used One Call's goodwill with its customers, including the Fund and Matrix.

201.    Upon information and belief, Burch has provided to and/or used on behalf of AHP and/or Cypress Care One Call's confidential, proprietary, and trade secret information regarding its advantageous business relationships with its customers, including the Fund and Matrix.

202.    Upon information and belief, AHP and/or Cypress Care, through Burch, have used One Call's confidential, proprietary, and trade secret information and goodwill

47

to solicit One Call's customers, including the Fund and its insureds and Matrix, to become customers of AHP and/or Cypress Care.

203.    As such, Burch has intentionally interfered with One Call's advantageous business relationships with those customers, including the Fund and its insureds and Matrix, and, under the circumstances, the interference was and is malicious, intentional, and unjustified.

204.    But for Burch's unlawful and unjustified conduct, One Call had a probability, if not an absolute certainty, of receiving the full economic benefit from its relationships with existing and prospective customers, including the Fund and its insureds and Matrix.

205.    As a consequence of the foregoing, One Call has suffered and will continue to suffer damages, harm, and loss, including among other things, direct and/or potential financial losses, lost dealings and lost business opportunities.

206.    One Call has been, and will continue to be, damaged and injured by Burch's tortious actions.

WHEREFORE, One Call respectfully requests that this Court grant One Call:

A.    temporary, preliminary, and permanent injunctive relief;

B.    actual and compensatory damages;

C.    exemplary damages; and

D.    such other and further relief as the Court deems equitable, just, and proper.

DM2\6437556.1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MSC Group, Inc., d/b/a One Call Care Management, respectfully demands judgment in its favor and against Defendant, Jordan Burch, and respectfully requests the following relief:

A. temporary, preliminary, and permanent injunctive relief prohibiting Burch from, directly or indirectly, engaging in any of the following activities, through at least October 31, 2016, and extended for each day in which Burch has been in violation of the restrictive covenants:

 a. providing any employment, consulting, or agency services with, or establishing or acquiring any interest in, any business, partnership, individual or other entity that engages in any business or activity that is the same as or competitive with the business conducted by One Call;

 b. performing any services on behalf of Advanced Hearing Providers ("AHP"), Cypress Care, or any other competitor of One Call;

 c. accepting business from, or providing services to, any Covered Customer of One Call (including, but not limited to, the Fund and Matrix) in pursuit of a Competing Line of Business.

 d. in person or through assistance to others soliciting or attempting to solicit or communicate with or calling on any Covered Customer of One Call (including, but not limited to, the Fund and Matrix) in pursuit of a Competing Line of Business;

    e.  in person or through assistance to others soliciting or attempting to solicit or communicating with or calling on any Network Providers of One Call in pursuit of a Competing Line of Business; or

    f.  otherwise violating his agreements with One Call;

B.  an order requiring Burch to immediately return all documents and information, paper, electronic, or otherwise, belonging to or derived from One Call;

C.  an order requiring Burch to immediately provide to One Call any documents and things created by Burch on behalf of One Call competitors, including without limitation, AHP and Cypress Care, that in any way incorporates, uses, discloses, or references One Call's information;

D.  an order requiring Burch to permit One Call's forensic examination of all computers and other electronic devices used by Burch from September 1, 2015, to the present;

E.  other equitable relief, including without limitation, a constructive trust on Burch's improper earnings resulting from Burch's breach of his contractual and legal obligations and/or wrongful use and/or disclosure of One Call's confidential and trade secret information;

F.  all actual and compensatory damages;

G.  any actual damages that One Call is entitled to recover as a result of Burch's misappropriation and/or threatened misappropriation and/or

DM2\6437556.1

inevitable misappropriation of trade secrets and/or confidential and proprietary information;

H.  exemplary damages as permitted by law;

I.  One Call's attorneys' fees and costs associated with these proceedings; and

J.  all such other and further relief as the Court deems equitable, just, and proper.

**Kevin E. Vance is hereby designated as lead trial counsel on behalf of Plaintiff.**

**A jury trial is demanded.**

DM2\6437556.1

Dated: January **11**, 2016                    Respectfully submitted,

By:_____
Kevin E. Vance, Esq.
DUANE MORRIS LLP
200 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Telephone: 305.960.2311
Fax: 305.397.2264
kevance@duanemorris.com
*Attorneys for Plaintiff,*
*MSC Group, Inc.*
*d/b/a One Call Care Management*
*Lead Trial Counsel for Plaintiff*

## VERIFICATION

I, Samuel J. Hillman, Senior Vice President for Sales, Complex Division, of One Call Care Management, hereby declare that I have read the foregoing Verified Complaint and verify that the facts alleged therein are true to the best of my knowledge, information, and belief.  Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury, and based on my review of Plaintiff's records, that the foregoing is true and correct.

Dated: 1-9-16

_____
Samuel J. Hillman

STATE OF ARIZONA
COUNTY OF MARICOPA,

Witness my hand and official seal hereto affixed
this 9th day of January, 2016.

_____, Notary
Notary Public in and for the State of Arizona,
My commission expires 4-20-16.

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
KYLE ANDREW ANDERSON
My Commission Expires 04/20/16

DM2\6437556.1