# Exhibit A

**CONFIDENTIALITY, UNFAIR COMPETITION, NON-SOLICITATION AND INVENTION ASSIGNMENT AGREEMENT**

**EXECUTION SHEET**

This Confidentiality, Unfair Competition, Non-Solicitation and Invention Assignment Agreement consists of two parts: I) the Execution Sheet; II) the Terms and Conditions. (The Execution Sheet and Terms and Conditions are collectively referred to herein as the "Agreement").

I ("Employee") certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I understand and will fully and faithfully comply with such provisions. In consideration of the mutual covenants and promises stated herein and other good and valuable consideration, the Company and Employee agree to be bound by this Agreement, effective as of February 26, 2014.

**ONE CALL CARE MANAGEMENT**

**Sign:** [signature]

**Print Name:** Steven Davis

**Print Title:** Chief Legal Officer

**Date:** February 26, 2014

**EMPLOYEE**

**Sign:** [signature]

**Print Name:** Jordan Burch

**State of Residence:** Oregon

**Date:** 3-7-14

**CONFIDENTIALITY, UNFAIR COMPETITION, NON-SOLICITATION AND INVENTION ASSIGNMENT AGREEMENT**

**TERMS AND CONDITIONS**

This Agreement is intended to formalize certain understandings and procedures which apply to my employment with One Call Care Management, and its parents, direct or indirect subsidiaries, joint ventures, and other entities in which the company holds a controlling equity interest (the "Company"). I (sometimes referred to herein as the "Employee") acknowledge and agree that:

1. **Duties and Considerations**

a. I am or was employed by the Company and acknowledge that it is a condition to my initial and/or continued employment with the Company and/or my eligibility for certain bonus programs provided by the Company that I execute this Agreement. The provisions of this paragraph are subject to state specific modifications in Appendix B.

b. In reliance upon entering into this Agreement, the Company will provide or has provided me with one or more of the following: specialized training; knowledge of its business, Confidential Information (as defined below), customers and other valuable and confidential business information; and/or, an opportunity to deal with, and develop goodwill with, its customers and prospective customers, suppliers, and employees. The Company wishes to protect its Confidential Information, training investment, good will, and business relationships. I recognize and agree that I will or have been be placed in a special position of trust and confidence that includes knowledge, training, and business contacts that would give me an unfair competitive advantage if no limitations were placed on my post-employment activities. I further agree that a confidentiality obligation standing alone is insufficient to protect against such unfair competition. Accordingly, as a material condition of employment by the Company, I agree to terms of this Agreement in order to help protect the Company's vital business interests.

2. **At-Will Employment.** I agree that my employment with the Company is for no specified term and may be terminated by the Company at any time, with or without cause, and with or without notice. Similarly, I may terminate my employment with the Company at any time, with or without cause and with or without notice. The termination of employment shall not release me from the obligations respecting the subject matter of any invention or other confidential information, nor shall it release me from any of the obligations set forth herein.

3. **No Conflict.** During my period of employment by the Company, I will devote my best efforts to the interests of the Company and will not engage in other employment or in any activities that conflict with my job duties for the Company without the prior written consent of the Company. I agree to first offer to the Company corporate opportunities learned of solely as a result of my service as an employee of the Company.

4. **Non-Disclosure of Confidential Information**

a. The business in which the Company is engaged is extremely competitive and I acknowledge that during my employment with the Company I have received and will receive and have access to materials and information regarding the Company's technologies, know-how, products, services and sales that are proprietary and confidential to Company ("Confidential Information"). The Company has spent and will continue to spend substantial time and money developing its technologies, products and services and training its employees on its technologies, products and services. I recognize that these



Employee Initials: ____

technologies, products and services are an important and valuable asset to the Company and that the Company has a legitimate interest in protecting these technologies, products and services. The Company has provided and will be providing me with information, materials, property, training and Confidential Information during my employment and may also be providing me with the opportunity to contribute to the creation of Confidential Information, which will assist both Company and me in competing effectively, and provide me with opportunities for advancement and increased compensation. I recognize that these materials and Confidential Information are an important and valuable asset to Company and that Company has a legitimate interest in protecting the confidential and proprietary nature of these materials and information and that Company has spent and will continue to spend substantial time and money developing the Confidential Information.

b. I understand that Confidential Information is defined as any item of information, or a compilation of information, in any form (tangible or intangible), related to the Company's business that Company has not made public or authorized public disclosure of, and that is not generally known to the public through proper means. Confidential Information will not lose its protected status under this Agreement if it becomes generally known to the public or to other persons through improper means such as the unauthorized use or disclosure of the information by me or another person. Confidential Information protected under this Agreement includes any and all information concerning the Workers' Compensation administrative services, the processes and business methods developed by the Company with regard to its services, products, any research or development and test results concerning the Company's services, products, business methods and processes, information concerning patents pending, specifications, new materials research, pending projects and proposals, any cost, pricing or other financial data or projections, including, without limitation, pricing strategies and plans, scientific data, formulae, and prototypes, marketing plans and surveys, sales tactics and plans, business plans, strategies, forecast; projects in development, unpublished financial information, profitability information, forms, transaction documents, budgets, supplier lists, identities, characteristics, agreements, and methods, techniques of operation and private personnel information of the Company, in whatever form and whether or not such information is identified as confidential or proprietary. Confidential Information also includes the identities of the Company's customers and other information about those customers, including their requirements, the names of their decision-makers, and their contracts with the Company. I understand and agree that this is Confidential Information which the law treats as privileged, therefore protecting an employer from use without consent. Confidential Information shall include both information developed by me for the Company and information I obtained while in the Company's employ. All Confidential Information, whether created by me or other employees, shall remain the property of the Company.

c. During my employment and at any time after the termination of my employment, I agree to hold all Confidential Information in trust and confidence and not to engage in any unauthorized use or disclosure of all Confidential Information. I shall not, without written consent of the Company, publish or use, disclose, disseminate, or identify by topic or subject, to anyone other than authorized Company personnel any Confidential Information. I agree to abide by the Company policies and regulations for the protection of its Confidential Information and I understand and agree that the unauthorized disclosure or misuse of such Confidential Information could irreparably damage the Company.

5. **Protective Covenants**

a. I acknowledge that a simple agreement not to disclose or use Company Confidential Information after my employment would be inadequate, standing alone, to protect the Company's legitimate business interests because some activities by a former employee who had held a position like mine would, by their nature, compromise such Confidential Information as well as the goodwill and customer relationships that the Company will pay me to develop during my employment. I



Employee Initials:

recognize that activities that violate the Company's rights will cause irreparable injury to the Company. To prevent such irreparable harm, I agree that for a period of twelve (12) months following the termination of my employment with the Company, I will abide by the following Protective Covenants:

(1) No Conflicting Business Activities. I will not provide services directly or indirectly, for the benefit of a Competitor in any role or position (as an employee, consultant, or otherwise) that would involve Competitive Business Activities within the Restricted Area The provisions of this paragraph are subject to the state specific modifications in Appendix B.

(2) No Interference of Customers. I will not (in person or through assistance to others) accept business from, or provide services to, any Covered Customer of the Company in pursuit of a Competing Line of Business. The provisions of this paragraph are subject to the state specific modifications in Appendix B

(3) No Solicitation of Customers. I will not (in person or through assistance to others) solicit or attempt to solicit or attempt to solicit or communicate with or call on any Covered Customer of the Company in pursuit of a Competing Line of Business. The provisions of this paragraph are subject to the state specific modifications in Appendix B.

(4) No Solicitation of Employees. I will not (in person or through assistance to others) knowingly participate in soliciting or communicate with a Company Employee for the purpose of persuading or helping the Company Employee to end or reduce his or her employment relationship with the Company if I either worked with that Company Employee or received Confidential Information about that Company Employee in the last two years of my employment.

(5) No Solicitation of Suppliers. I will not (in person or through assistance to others) knowingly participate in soliciting or communicating with a Company Supplier for the purpose of persuading or helping that Supplier to end or modify to the Company's detriment an existing business relationship with the Company if I either worked with that Supplier or received Confidential Information about that the Company Supplier in the last two years of my employment.

(6) No Solicitation of Network Providers. I will not (in person or through assistance to others) solicit or attempt to solicit or attempt to solicit or communicate with or call on any Network Providers of the Company in pursuit of a Competing Line of Business. The provisions of this paragraph are subject to the state specific modifications in Appendix B

(7) Non-Disparagement. I will not disparage the Company, any of its products or practices, or any of its agents, representatives or affiliates, either orally or in writing, at any time; provided, that I may confer in confidence with my legal representatives and make truthful statements as required by law.

b. Definitions. As used herein, "Competitor" means an individual, corporation, other business entity or separately operated business unit of an entity that engages in a Competing Line of Business. "Competing Line of Business" means a business that involves providing Workers' Compensation administrative services, or a product or service offered by anyone other than the Company that would replace or compete with any product or service offered or which the Company has taken any actions in anticipation of offering, during the term of employment (unless the Company and its subsidiaries are no longer engaged in or planning to engage in that line of business as of my last day of employment with the Company). "Competitive Business Activities" means job duties or other business-related activities that are the same or similar in function or purpose to those performed for the Company including activities about which I received Confidential Information during the term of my employment



Employee Initials: ______

with the Company. Restricted Area means the territories or counties in the states where the Company performed services during the term of my employment with the Company. "Covered Customer" means any customer who purchased services from the Company or was solicited by the Company to purchase services if I either called upon or had business-related contact with that Covered Customer or received Confidential Information about that Covered Customer during the term of my employment with the Company. "Company Employee" means an individual employed by or retained as a consultant to the Company or its subsidiaries during the term of my employment with the Company. "Company Supplier" shall mean a supplier who provides goods and/or services used by the Company to provide services to a company customer (as opposed to administrative supplies). "Network Provider" means a provider of medical care, products or services on behalf of the Company.

c. Notice of Post-Employment Activities. If I accept a position with a Competitor at any time within twelve (12) months following termination of my employment with the Company, I will promptly give written notice to the senior Human Resources manager for the Company business sector in which I worked, and will provide the Company with the information it needs about my new position to determine whether such position would likely lead to a violation of this Agreement (except that I need not provide any information that would include the Competitor's trade secrets).

d. Relief; Extension. I understand that if I violate this Agreement (particularly the Protective Covenants), the Company will be entitled to (i) injunctive relief by temporary restraining order, temporary injunction, and/or permanent injunction, (ii) recovery of attorneys' fees and costs incurred by the Company in obtaining such relief where allowed by law, and (iii) any other legal and equitable relief to which the Company may be entitled. Injunctive relief will not exclude other remedies that might apply. If I am found to have violated any restrictions in the Protective Covenants, then the time period for such restrictions will be extended by one day for each day that I am found to have violated them, up to a maximum extension equal to the time period originally prescribed for the restrictions.

6. **Prior Inventions.** Except for the inventions disclosed on Appendix A, I do not have any right or claim to any invention, idea, process, formula, discovery, copyright, patent or other such item or matter. No rights are hereby conveyed to inventions, if any, made by me prior to employment by the Company, which inventions are listed in Appendix A, attached hereto. For the avoidance of doubt, if Appendix A is blank, I am disclaiming any rights or claims to any invention, idea, process, formula, discovery, copyright, patent or other such item or matter.

7. **Subsequent Invention Disclosure.** I hereby agree to promptly disclose to the Company in writing any and all inventions that I develop during the term of employment. I will also disclose to the Chief Legal Officer of the Company in writing all inventions made, conceived, reduced to practice, or developed by me within six months of the termination of my employment with the Company that resulted from my prior work with the Company. Such disclosures shall be received by the Company in confidence and do not extend the assignment of inventions disclosed beyond that required by law.

8. **Assignment Of Inventions.** I hereby convey and assign to the Company or its designee, my entire right, title and interest in and to all inventions, works of authorship, developments, concepts, discoveries, ideas, trademarks and trade secrets, whether or not patentable or registrable under copyright or similar laws ("Inventions") which I have developed or may solely or jointly develop, conceive or reduce to practice, during the period of employment, except as provided in section 10 below. I agree that all such Inventions are the sole property of the Company. I further agree that all such Inventions, including works of authorship are "works for hire" for purposes of the Company's rights under copyright laws. I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the



Employee Initials: ______

Company. The records will be available to and remain the sole property of the Company at all times. I understand and agree that the decision whether or not to commercialize or market any invention developed by me, solely or jointly with others, is within the Company's sole discretion and for the Company's sole benefit. No royalty will be due to me as a result of the Company's efforts to commercialize or market any such invention.

9. **Patent And Copyright Registrations.** I further agree to perform, during and after employment with the Company, all acts deemed necessary or desirable to permit and assist the Company, at its own expense, in obtaining and enforcing the full benefits, enjoyment, rights and title of and to the inventions hereby assigned by to the Company as set forth above, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, trademark and other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable, because of my mental or physical incapacity or for any other reason, to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in its behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

10. **Inventions Not Assigned.** I understand and acknowledge that the assignment of inventions under this Agreement does not apply to an invention which qualifies fully for protection under relevant state statutes[1], in connection with an invention, discovery or improvement that was developed entirely on my own time for which no equipment, supplies, facilities, Confidential Information or trade secret information of the Company was used and (a) that does not relate directly or indirectly to the business of the Company or to the Company's actual or demonstrably anticipated research or development, or (b) that does not result from any work performed by me for the Company.

11. **Company Property.** All correspondence, memoranda, records, databases, reports, documents, equipment, digitally-stored information or other property received or made by me in connection with my employment are the exclusive property of the Company. Upon termination of my employment with Company for any reason whatsoever, or upon request by the Company, I will immediately return to Company any and all Confidential Information and any and all information and materials relating to Company's business, products, personnel, suppliers or customers, whether or not such material is deemed to be confidential or proprietary. Thereafter, any continued possession will be deemed to be unauthorized. I shall not retain any copies of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents in any form whatsoever (including information contained in computer memory or on any computer disk) relating in any way to the affairs of Company and which were entrusted to me or obtained by me at any time during my employment with Company. I may, however, retain records pertaining to my personal compensation and insurance or retirement

[1] Including as applicable to your employment: California Labor Code Section 2870; Delaware Code Title 19 Section 805; Illinois 765ILCS1060/1-3, "Employees Patent Act"; Kansas Statutes Section 44-130; Minnesota Statutes 13A Section 181.78; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1; Utah Code Sections 34-39-1 through 34-39-3, "Employment Inventions Act"; Washington Rev. Code, Title 49 RCW: Labor Regulations, Chapter 49.44.140.



Employee Initials:

benefits provided by the Company and any records required for tax reporting or similar reporting obligations compelled by law. Further, I recognize and stipulate that I am not authorized to access any of the Company's computer systems, email, or other electronic storage devices for personal gain to the detriment of the Company or for the benefit of a Competitor or Competing Line of Business, and that such access would cause material harm to the Company's computer storage systems and business interests.

12. **No Violation Of Prior Agreements.** I represent that the performance of all the terms of this Agreement as an employee of this Company will not conflict with, and will not breach, any other agreement, including, without limitation, any invention assignment agreement, confidentiality agreement, employment agreement or non-competition agreement, to which I am or have been a party. To the extent that I have confidential information or materials of any former employer of mine, I acknowledge that the Company has directed me to not disclose such confidential information or materials to the Company or any of its employees, and that the Company prohibits me from using said confidential information or materials in any work that I may perform for the Company. I will not bring with me to the Company, and will not use or disclose any confidential, proprietary information, or trade secrets acquired by me prior to my employment with the Company. I will not disclose to the Company or any of its employees, or induce the Company or any of its employees to use, any confidential or proprietary information or material belonging to any previous employers or others. I further agree not to enter into any agreement, whether written or oral, in conflict with the provisions of this Agreement.

13. **Survival.** This Agreement (1) shall survive my employment by the Company; (2) does not in any way restrict my right or the right of the Company to terminate my employment at any time, for any reason or for no reason; (3) inures to the benefits of successors and assigns of the Company; and (4) is binding upon my heirs and legal representatives.

14. **Governing Law.** Florida (the "State") law shall control in the interpretation and application of this Agreement without regard to any choice of law principals of the State. I consent to the exclusive jurisdiction of the courts located in the State, and agree that the State is the proper forum and venue for any legal action arising under this Agreement. This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

15. **Severability.** Should any provisions of this Agreement be held by a court of law to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

16. **Counterparts and Electronic Signatures.** This Agreement may be signed in several counterparts, each of which shall be deemed an original, including facsimile and electronic versions. A reference to a signature or to anything being signed or executed includes electronic signatures to the extent and as provided for in any applicable law. Electronic signatures have the same legal effect, validity or enforceability as manually executed signatures.

17. **Entire Agreement.** This Agreement represents my entire understanding with the Company with respect to the subject matter of this Agreement and supersedes all previous understandings, written or oral. This Agreement may be amended or modified only with the written consent of both me and the Company. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.



Employee Initials: ______

## APPENDIX A

## PRIOR INVENTIONS



Employee Initials:

## APPENDIX B

**State Specific Modifications.**

***If the Employee resides in any state except Arkansas, Arizona, California, Connecticut, Georgia, Louisiana, Nebraska, North Dakota, Oklahoma or Wisconsin, no state specific modifications apply.***

***If the Employee resides in Arkansas, the following language is incorporated into and made a part of the Agreement:*** While employee is a resident of Arkansas, and in the event that the choice of law provision contained in Paragraph 14 does not control: the restrictions on use or disclosure of Confidential Information provided for in Paragraph 4 shall only apply for a period of three (3) years following the end of Employee's employment where information that does not qualify as a trade secret is concerned; however, the restrictions will continue apply to trade secret information for as long as the information at issue remains qualified as a trade secret.

***If the Employee resides in Arizona, the following language is incorporated into and made a part of the Agreement:*** While employee is a resident of Arizona, and in the event that the choice of law provision contained in Paragraph 14 does not control: the restrictions in Paragraph 5(a)(2)and 5(a) (3) are limited to apply only in the Restricted Area defined as the territories or counties in the states where the employee performed services during the term of employment with the Company.

***If the Employee resides in California, the following language is incorporated into and made a part of the Agreement:*** While Employee is a resident of California and subject to its laws: (a) the restrictions in Paragraph 5(a) (2), (3) and (5) will be limited so that they only apply where Employee is aided by the use or disclosure of Confidential Information, (b) the post-employment restrictions against competition in Paragraph 5(a) (1) will not apply.

***If the Employee resides in Connecticut, the following language is incorporated into and made a part of the Agreement:*** While employee is a resident of Connecticut, and in the event that the choice of law provision contained in Paragraph 14 does not control: the restrictions on use or disclosure of Confidential Information provided for in Paragraph 4 shall only apply for a period of three (3) years following the end of Employee's employment where information that does not qualify as a trade secret is concerned; however, the restrictions will continue apply to trade secret information for as long as the information at issue remains qualified as a trade secret.

***If the Employee resides in Georgia, the following language is incorporated into and made a part of the Agreement:*** While employee is a resident of Georgia, and in the event that the choice of law provision contained in Paragraph 14 does not control: (a) the restrictions on use or disclosure of Confidential Information provided for in Paragraph 4 shall only apply for a period of three (3) years following the end of Employee's employment where information that does not qualify as a trade secret is concerned (the restrictions will apply to trade secret information for as long as the information remains qualified as a trade secret); (b) Paragraph 5(a)(2) is rewritten as follows: Employee agrees that for a period of one (1) year following the end of Employee's employment with Company, Employee will not, in any way, directly or indirectly, solicit, divert, or take away, or attempt to solicit, divert or take away, the customers of the Company which were served by the Employee during the term of his or her employment with the Company for the purpose of selling to such customer any service or product which is provided by the Company at the time of execution of this Agreement; unless a duly authorized Company officer gives Employee written authorization to do so; (c) The restrictions in Paragraph 5(a) (1) and the definition of "Restricted Area" will be modified so that the restrictions in Paragraph 5(a) (1) only apply within the following: all fifty states.



Employee Initials:

***If the Employee resides in Louisiana, the following language is incorporated into and made a part of the Agreement***: While employee is a resident of Louisiana and subject to its laws: the enforcement of the post-employment restrictions in Paragraphs 5(a) (1) and 5(a) (2) will be limited within the state of Louisiana to the following Parishes where Employee has or will help the Company do business: Acadia, Morehouse, Allen, Natchitoches, Ascension, Orleans, Assumption, Ouachita, Avoyelles, Plaquemines, Beauregard, Pointe Coupee, Bienville, Rapides, Bossier, Red River, Caddo, Richland, Calcasieu, Sabine, Caldwell, St. Bernard, Cameron, St. Charles, Catahoula, St. Helena, Claiborne, St. James, Concordia, St. John the Baptist, Desoto, St. Landry, East Baton Rogue, St. Martin, East Carroll, St. Mary, East Feliciana, St. Tammany, Evangeline, Tangipahoa, Franklin, Texas, Grant, Terrebonne, Iberia, Union, Iberville, Vermillion, Jackson, Vernon, Jefferson Davis, Washington, Jefferson, Webster, Lafayette, West Baton Rogue, Lafourche, West Carroll, LaSalle, West Feliciana, Lincoln, Winn, Livingston, Madison, provided, however, that nothing herein shall be construed to prohibit the enforcement of Paragraphs 5(a) (1) or 5(a) (2) in accordance with their terms in states outside of Louisiana.

***If the Employee resides in Nebraska, the following language is incorporated into and made a part of the Agreement***: While employee is a resident of Nebraska, and in the event that the choice of law provision contained in Paragraph 14 does not control: the post-employment restrictions in Paragraph 5 (a) (1) will not apply.

***If the Employee resides in North Dakota, the following language is incorporated into and made a part of the Agreement***: While Employee is a resident of North Dakota, and in the event that the choice of law provision contained in Paragraph 14 does not control: (a) the restrictions in Paragraph 5(a) (2), (3) and (5) will be limited so that they only apply if Employee is aided by the use or disclosure of Confidential Information, and (b) the post-employment restrictions against competition in Paragraph 5(a) (1) will not apply

***If the Employee resides in Oklahoma, the following language is incorporated into and made a part of the Agreement:*** While employee is a resident of Oklahoma, and in the event that the choice of law provision contained in Paragraph 14 does not control: the restrictions in Paragraph 5(a) (2) and (3) will apply only to customers who had been Company customers within one year of the end of Employee's employment with the Company and who have not fully and finally ceased doing business with Company due to no fault of Employee at the relevant time of enforcement.

***If the Employee resides in Wisconsin, the following language is incorporated into and made a part of the Agreement:*** While employee is a resident of Wisconsin, and in the event that the choice of law provision contained in Paragraph 14 does not control: (a) the restrictions on use or disclosure of Confidential Information provided for in Paragraph 4 shall only apply for a period of three (3) years following the end of Employee's employment where information that does not qualify as a trade secret is concerned (the restrictions will apply to trade secret information for as long as the information remains qualified as a trade secret); and (b) the post-employment restrictions in Paragraph 5(a) (1), and the definition of "Restricted Area" will be modified so that the restrictions in Paragraph 5(a) (1) only apply within the following: all fifty states.



Employee Initials: ______