# Exhibit B

# CONFIDENTIALITY AND NONCOMPETITION AGREEMENT

This Confidentiality and Noncompetition Agreement (this "Agreement) is entered into and shall be effective as of September 6, 2011, between MSC Group, Inc., a Delaware corporation (the "Company"), and Jordon Burch, a resident of the State of Oregon (the "Employee").

## RECITALS

The Employee is an employee of the Company and the Company and the Employee desire to define the relative rights of the Company and the Employee with respect to, among other things, certain Confidential Information (as defined below), and it is a condition to the employment of the Employee by the Company and the Employee's eligibility for certain bonus programs provided by the Company that the Employee execute this Agreement.

## TERMS OF AGREEMENT

In consideration of the above recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. Confidential Information. The Employee recognizes and acknowledges that he or she will have access to certain Confidential Information (as defined below) and that such information constitutes valuable, special and unique property of the Company. The Employee acknowledges that the Confidential Information is and shall remain the exclusive property of the Company. The Employee agrees that he or she will not at any time (whether during the term of the Employee's employment with the Company (the "Term") or at any time thereafter) disclose any Confidential Information to anyone outside the Company, or utilize any Confidential Information for his or her own benefit or the benefit of any third party without the prior written consent of the Company. The Employee further agrees that all memoranda, disks, files, notes, records or other documents which contain Confidential Information, whether in electronic form or hard copy, and whether created by the Employee or others, which come into his or her possession, shall be and remain the exclusive property of the Company to be used by the Employee only in the performance of his or her obligations hereunder. The Employee agrees that the foregoing restrictions shall apply whether or not such information is marked "Confidential," "Proprietary" or otherwise. For purposes hereof, "Confidential Information" shall mean and include all information, whether written or oral, tangible or intangible, of a private, secret, proprietary or confidential nature, of or concerning the Company or its business or operations, including without limitation any trade-secrets or know-how, computer software programs in both source code and object code form, any technique, process or methodology, any formularies (including service specific and injury specific formularies for products and services), any sales, promotional or marketing plans, programs, techniques, practices or strategies, any expansion plans (including existing and entry into new markets), any operational or management guidelines, any cost, pricing or other financial data or projections, the identity and background of any customer, patient, employee, prospect, supplier, provider or investor, and any other information that is to be treated as confidential because of any duty of confidentiality owed by the Company to a third party or any other information that the Company shall, in the ordinary course of business, possess or use and not release externally without restriction on use or

disclosure. Notwithstanding the foregoing, the term "Confidential Information" shall not include information which (a) was known by the Employee prior to the commencement of his or her employment with the Company, (b) becomes available to the Employee from a source other than the Company, its affiliates or parties with whom the Company does business that is not bound by a duty of confidentiality to the Company, its affiliates or such other parties, or (c) becomes generally available or known in the industry other than as a result of its disclosure by the Employee. In the event that the Employee becomes, on the advice of counsel, legally obligated to disclose any Confidential Information other than to the Company, he or she will provide the Company with prompt written notice thereof so that the Company may seek a protective order or other appropriate remedy and the Employee will cooperate with and assist the Company in securing such protective order or other remedy. In the event that such protective order is not obtained, or that the Company waives compliance in writing with the provisions of this Section to permit a particular disclosure, the Employee will furnish only that portion of the Confidential Information which he or she is, on the advice of counsel, legally required to disclose.

2. Return of Documents and Property. Upon the termination of the Employee's employment with the Company or at any other time upon the request of the Company, the Employee (or his or her heirs or personal representatives) (a) shall deliver to the Company all memoranda, disks, files, notes, records or other documents which contain or are based upon Confidential Information and shall not retain any copies thereof in any format or storage medium (including computer disk or memory) and (b) purge from any computer system in his or her possession other than those owned by and returned to the Company, all computer files which contain or are based upon any Confidential Information and confirm such purging in writing to the Company.

3. Noncompetition. The Employee acknowledges that the Company engages in a competitive business, the Employee's services and responsibilities are unique in character and are of particular significance to the Company, and the Employee's position with the Company will place him or her in a position of confidence and trust with the customers, patients, suppliers, employees of and investors in the Company. The Employee consequently agrees that it is reasonable and necessary for the protection of the Company and its goodwill and business that the Employee makes the commitments set forth herein. The Employee therefore agrees that, except where such restrictions are prohibited by applicable law, during the Term and for a period of one (1) year thereafter (the "Restricted Period"), he or she will not as an individual proprietor, partner, shareholder, officer, director, employee, consultant, independent contractor, agent, joint venturer, investor or lender, directly or indirectly, engage, anywhere where the Company provides services, in the business of providing home health, transportation, translation, medical equipment or devices, physical, speech or occupational therapy (in the home or otherwise), dental or other related products or services, or selling products in connection therewith, to the workers' compensation insurance industry or in any other business engaged in by the Company or any of its affiliates while the Employee was employed by the Company, or in service to Align Networks or Express Dental; provided, however, that the beneficial ownership by the Employee of less than two percent (2%) of the shares of common stock of any other corporation having a class of equity securities actively traded on a national securities exchange or over-the-counter market shall not be deemed, in and of itself, to violate the prohibitions of this Section.

4. Non-Solicitation of Employees. The Employee agrees that, except where such restrictions are prohibited by applicable law, he or she will not during the Restricted Period,

directly or indirectly, employ or permit any company or business directly or indirectly controlled by him or her to employ, any person who is, or at any time during the preceding twelve month period, was an employee or consultant of the Company or any of its affiliates, or induce, persuade or seek to induce or persuade any such person to leave his or her employment or engagement with the Company or any of its affiliates.

5. Non-Solicitation of Customers. During the Restricted Period, except where such restrictions are prohibited by applicable law, the Employee shall not, except as an employee or agent of the Company, directly or indirectly, on behalf of himself, herself or any other person or entity, accept business from or solicit the business of any person or entity who is, or who had been at any time during the preceding twelve month period or at any time during the Employee's employment by the Company, a client or customer of the Company, any of its affiliates or any successors to the business of the Company (each a "Customer"), or otherwise divert or attempt to divert any business from the Company, any of its affiliates or any of their successors, or otherwise induce, request, advise or persuade any Customer to cease to do business with or reduce the amount of business which such Customer has customarily done or is reasonably expected to do with the Company, any of its affiliates or any of their successors.

6. Non-Disparagement. The Employee agrees that at all times during and after the Term, the Employee will not engage in any conduct that is injurious to the reputation or interests of the Company or its affiliates, including, but not limited to, making disparaging comments (or inducing or encouraging others to make disparaging comments) about the Company or any of its affiliates, or any of their respective directors, officers, employees or agents, or their respective operations, financial condition, prospects, content, products or services.

7. Enforceability of Restrictive Covenants. The Employee hereby acknowledges that the restrictions on the Employee's activity contained in Sections 1, 2, 3, 4, 5 and 6 are necessary for the reasonable protection of the Company and are a material inducement to the Company's employment or continuation of employment, as applicable, of the Employee. The Employee further acknowledges that a breach or threatened breach of any such provisions would cause irreparable harm to the Company for which there is no adequate remedy at law. The Employee agrees that in the event of any breach or threatened breach of any provision contained in Section 1, 2, 3, 4, 5 or 6 of this Agreement, the Company shall have the right, in addition to any other rights or remedies it may have, to obtain injunctive relief without having to post bond or other security and without having to prove special damages or the inadequacy of the available remedies at law. The parties acknowledge that (a) the time, scope, geographic area and other provisions contained in Sections 1, 2, 3, 4, 5 and 6 are reasonable and necessary to protect the goodwill and business of the Company, and (b) the restrictions on the Employee's ability to solicit Customers will not prevent the Employee from being employed or earning a livelihood. If any covenant contained in Section 1, 2, 3, 4, 5 or 6 is held to be unenforceable by reason of the time, scope or geographic area covered thereby, such covenant shall be interpreted to extend to the maximum time, scope or geographic area for which it may be enforced as determined by a court making such determination, and such covenant shall only apply in its reduced form to the operation of such covenant in the particular jurisdiction in which such adjudication is made. In the event that the Company shall bring any action, suit or proceeding against the Employee for the enforcement of this Agreement, the calculation of the Restricted Period shall not include the period of time commencing with the filing of the action, suit or proceeding to enforce this Agreement through the date of the final judgment or final resolution (including all appeals, if

any) of such action, suit or proceeding. The existence of any claim or cause of action by the Employee against the Company or any of its affiliates predicated on this Agreement or otherwise shall not constitute a defense to the enforcement by the Company of any provision of Sections 1, 2, 3, 4, 5 or 6.

8. No Guarantee of Employment. The Employee recognizes and acknowledges that he or she is an at-will employee of the Company and no term or provision contained herein shall be deemed to create any relationship other than an at-will employment arrangement by and between the Employee and the Company. This Agreement is intended only to define certain rights and obligations of the Employee and Company with respect to, among other things, certain Confidential Information and other intellectual property. Notwithstanding this Agreement, the Company reserves the right to terminate the Employee's employment at any time.

9. Governing Law; Jurisdiction. This Agreement shall be construed in accordance with the laws of the State of Florida applicable to contracts executed and to be wholly performed within such State. The parties to this Agreement agree that any suit, action or proceeding arising out of or relating to this Agreement or any judgment entered by any court in respect thereof shall be brought in the courts of Duval County, Florida or in the U.S. District Court for the Middle District of Florida, Jacksonville Division. Each party hereby irrevocably and unconditionally (a) accepts the exclusive personal jurisdiction of such courts for the purpose of any action, suit or proceeding arising out of or relating to this Agreement, (b) waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any action, suit or proceeding arising out of or relating to this Agreement or any judgment entered by any court in respect thereof brought in such courts, (c) waives any claim that any action, suit or proceeding brought in any such court has been brought in an inconvenient forum, and (d) agrees that service of any process, summons, notice or document by U.S. registered or certified mail to the address set forth in Section 10 below shall be effective service of process for any action, suit or proceeding brought against any party in any such court.

10. Notices. Any notice, request or other document required or permitted to be given under this Agreement shall be in writing and shall be deemed given (a) upon delivery, if delivered by hand, (b) three (3) days after the date of deposit in the mail, postage prepaid, if mailed by U.S. certified or registered mail, or (c) on the next business day, if sent by prepaid overnight courier service, in each case, addressed as follows (x) if to the Employee, to the address set forth below his or her name on the signature page hereto, and (y) if to the Company, to MSC Group, Inc., 841 Prudential Drive, Suite 900, Jacksonville, Florida 32207, Attention: President. Any party may change the address to which notice shall be sent by giving notice of such change of address to the other party in the manner provided above.

11. Miscellaneous Provisions.

(a) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns, except that the Employee may not assign any of his or her rights or delegate any of his or her duties hereunder without the prior written consent of the Company (which may be granted or withheld in the Company's sole and absolute discretion).

(b) This Agreement constitutes the entire understanding of the parties relating to the subject matter hereof and supersedes all prior agreements, understandings, arrangements, promises and commitments, whether written or oral, express or implied, relating to the subject matter hereof, and all such prior agreements, understandings, arrangements, promises and commitments are hereby canceled and terminated.

(c) This Agreement may not be amended, supplemented or modified in whole or in part except by an instrument in writing signed by the party or parties against whom enforcement of such amendment, supplement or modification is sought.

(d) The failure or delay of any party to enforce any provision of this Agreement shall in no way affect the right of such party to enforce the same or any other provision of this Agreement. The waiver by any party of any breach of any provision of this Agreement shall not be construed as a waiver by such party of any succeeding breach of such provision or a waiver by such party of a breach of any other provision. The granting of any consent or approval by any party in any one instance shall not be construed to waive or limit the need for such consent or approval in any other or subsequent instance.

(e) If any term or provision of this Agreement shall be determined by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the remaining provisions of this Agreement shall remain enforceable and the invalid, illegal or unenforceable provisions shall be modified so as to be valid and enforceable and shall be enforced.

(f) Section headings are included in this Agreement for convenience of reference only, and shall in no way affect the meaning or interpretation of this Agreement.

(g) This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

(h) In any action brought to enforce any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs from the other party to the action or proceeding. For purposes of this Agreement, the "prevailing party" shall be deemed to be that party who obtains substantially the result sought, whether by settlement, mediation, judgment or otherwise, and "attorneys' fees" shall include, without limitation, the actual attorneys' fees and paralegal fees' incurred in retaining counsel for advice, negotiations, suit, or other legal proceeding, including mediation and arbitration.

**[Signatures Appear on Following Page]**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

MSC GROUP, INC., a Delaware corporation

By: [signature]
Name: Joseph P. Delaney
Title: President & CEO

EMPLOYEE

[signature]
Jordan Burch
Address: 12060 Hazeldell Ave
Oregon City, OR 97045