FILED

2016 JAN 12 PM 3:22

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Jacksonville Division**

MSC GROUP, INC.
d/b/a ONE CALL CARE MANAGEMENT,

Plaintiff,

v.

JORDAN BURCH,

Defendant.

Civil Action No. 3:16-cv-27-J-39JRK

**EVIDENTIARY HEARING REQUESTED**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, MSC Group, Inc., d/b/a One Call Care Management ("Plaintiff" or "One Call"), by and through its undersigned counsel, and, pursuant to Fed. R. Civ. P. 65(a) and Local Rule 4.06, hereby files its Motion for Preliminary Injunction (the "Motion") against Defendant, Jordan Burch ("Defendant" or "Burch"), and its Incorporated Memorandum of Law and alleges:

1. One Call has filed its Verified Complaint and contemporaneously herewith files the Affidavits of Samuel Hillman and Amber Unruh in support of the Motion.

2. Among other claims, One Call alleges breach of contract claims for which injunctive relief is proper.

3. One Call is the nation's premier provider of specialized cost containment products, programs, and services to the workers' compensation industry throughout the

United States, and headquartered in Jacksonville, Florida. The cost containment market in which One Call conducts business is highly competitive.

4. One Call has brought this action against its former high-level National Sales Director, Burch, to prevent his scheme to compete with One Call and solicit and divert One Call customers, including two key One Call customers – the California State Compensation Insurance Fund (the "Fund," one of the largest providers of worker's compensation insurance in the nation) and Matrix Absence Management ("Matrix,", a nationwide company partnering with employers to provide customized management of benefit programs) – with whom Burch worked extensively on behalf of One Call – *now* for the benefit of One Call competitors, Advanced Hearing Products ("AHP"), Cypress Care, and himself, all in violation of his non-competition, non-solicitation, and confidentiality covenants.

5. Burch did not notify One Call of his intent to join AHP, or his actual or intended work with Cypress Care, despite his contractual obligation to notify One Call in writing if he took a role with a competitor that might implicate his post-employment obligations.

6. Instead, One Call only recently learned of Burch's unlawful conduct when an email, apparently intended for Burch's personal or AHP email account, was inadvertently forwarded to his One Call email account and revealed the plot by Burch to compete with One Call, including with respect to the Fund. Shortly thereafter, One Call learned of Burch calling on Matrix, another One Call customer with whom he worked closely while at One Call.

7. With Burch secretly calling on at least two of his prior One Call accounts to divert business in breach of his agreements, it is highly likely – if not an absolute certainty – that he is actively soliciting and seeking to divert business of other key One Call accounts as well.

8. Equally as egregious, Burch is, it appears, using and disclosing the confidential and proprietary information he obtained as a high level employee of One Call to compete against One Call, directly and indirectly, and to undermine its competitive standing.

9. Before the end of his One Call employment, Burch – unbeknownst to One Call – forwarded to his personal email account One Call's National Audiology Business Plan. Burch did not return the plan when he left One Call.

10. Now, armed with One Call's business plan, instead of honoring his contractual and other legal obligations in good faith, Burch almost immediately – and secretly – joined the ranks of One Call's competitors and began soliciting One Call's key customers.

11. Burch's immediate and targeted post-employment solicitation of Matrix and the Fund, including as One Call and its competitors are in the process of submitting proposals in response to a revised "Statement of Work" issued by the Fund, confirms his knowledge and improper use of One Call's confidential information, as well as his violation of the non-competition and non-solicitation obligations, satisfying the standards and presumptions established under the Florida Statutes, Section 542.335.

12. One Call is entitled to a preliminary injunction to prevent Burch from continuing to violate his post-employment obligations causing irreparable harm to One Call's business, including with respect to the substantial relationships and goodwill One Call has formed and maintained with its current and prospective customers that Burch seeks to undermine and its confidential information.

13. All of the factors under Federal Rule of Civil Procedure 65(a) and Local Rule 4.06 are satisfied.

14. One Call has established a substantial likelihood of success on the merits of its breach of contract claims. The one-year non-compete and non-solicit period to which Burch agreed is reasonable in its temporal and geographical scope, particularly in light of Burch's nationwide high-level responsibility for One Call, and Burch has breached it with respect to at least two customers – the Fund and Matrix.

15. One Call will suffer irreparable injury absent injunctive relief, and the balancing of the hardships weighs heavily in favor of granting injunctive relief. The enforcement of Burch's post-employment obligations is necessary to prevent substantial harm to One Call's goodwill, existing contractual and business relationships, confidential and proprietary information, business opportunities, and standing in this highly competitive industry.

16. The public interest reflected in the Florida Statutes, and in protecting One Call's legitimate business interests, favors granting injunctive relief.

17. Accordingly, One Call respectfully requests that this Court, *inter alia*, enter a preliminary injunction to stop Burch's flagrant breaches of his post-employment obligations.

18. Only a minimal bond, if any, is necessary to protect Burch's interests.

19. One Call respectfully requests that the Court permit the parties to conduct an evidentiary hearing and oral argument so that it may be fully heard on these important issues.

WHEREFORE, Plaintiff MSC Group, Inc., d/b/a One Call Care Management respectfully requests that this Honorable Court grant its Motion for Preliminary Injunction and issue the enclosed proposed order restraining Defendant, Jordan Burch, from further unfair competition with One Call and solicitation of One Call customers and prevent him from continuing to undermine and injure Plaintiff's legitimate business interests, together with such other relief the Court deems just and proper.

## MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND

To avoid unnecessary duplication, the factual background is set forth in detail in the Affidavit of Samuel Hillman, Senior Vice President, Complex Division Sales, for One Call, and Affidavit of Amber Unruh, Account Executive of One Call, filed contemporaneously with this Memorandum of Law, and incorporated herein by reference in their entirety.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 4.06, One Call is entitled to the injunctive relief it seeks because it has demonstrated that: (1) One Call has a substantial likelihood of success on the merits of its claims; (2) One Call will suffer irreparable injury absent injunctive relief; (3) the threatened injury to One Call outweighs any injury to Burch; and (4) an injunction is not adverse to the public interest. *Delta Airlines, Inc. v. Air Lines Pilots Ass'n, Intl.*, 238 F.3d 1300, 1308 n.18 (11th Cir. 2001).

## III. ARGUMENT

### A. One Call is Highly Likely to Succeed on the Merits of its Breach of Contract Claims at Trial.[1]

To establish a claim for breach of contract under Florida law, a plaintiff must prove: "(1) the existence of a contract; (2) material breach of that contract; and (3) damages resulting from the breach." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

#### 1. The Restrictive Covenants are Enforceable.

The 2014 Agreement is a valid and enforceable agreement. The Florida Statutes require only that the covenant be set forth in "a writing signed by the person against whom enforcement is sought" and be supported by a legitimate business interest. Fla. Stat. §§ 542.335(1)(a). The agreement bears the signatures of both Burch and One Call,

[1] Although One Call can also succeed on the merits of its other claims at trial, to obtain the injunctive relief sought, One Call need only succeed on the merits of its contract claim. *Cf. Wells Fargo Bank, N.A., v. Barber*, 85 F. Supp. 3d 1308, 1318 n.8 (M.D. Fla. 2015).

*see* 2014 Agreement, Exh. A to Verified Complaint, and, as discussed below, it is supported by One Call's legitimate business interests.

Under Section 542.335 of the Florida Statutes,[2] courts shall enforce "contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area and line of business is not prohibited." Fla. Stat. § 542.335(1). A party seeking to enforce a restrictive covenant must prove: (1) "the existence of one or more legitimate business interests justifying the restrictive covenant"; and (2) "that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." Fla. Stat. §§ 542.335(1)(b), (c). The covenants One Call seeks to enforce satisfy each of these requirements.

#### a. Burch's Covenants are Reasonably Limited as to Time, Area, and Activity.

##### i. The Temporal Scope of Burch's Covenants is Reasonable.

Burch's non-competition and customer non-solicitation covenants run for a period of only one year. 2014 Agreement, A to Verif. Compl., ¶¶ 5a(1)-(6). Under Florida law,

---

[2] Burch agreed that Florida law governs:

> **Governing Law.** Florida (the "State") law shall control in the interpretation and application of this Agreement without regard to any choice of law principals of the State. I [Burch] consent to the exclusive jurisdiction of the courts located in the State, and agree that the State is the proper forum and venue for any legal action arising under this Agreement.

2014 Agreement, Exh. A to Verif. Compl., ¶ 14 (emphasis in original).

covenants lasting six months or less are presumed to be reasonable, and covenants exceeding more than two years are deemed unreasonable. *See* Fla. Stat. § 542.335(1)(d)(1); *Balasco v. Gulf Auto Holdings, Inc.*, 707 So. 2d 858, 860 (Fla. 2d CDA 1998) (reforming three year restrictive covenant to enforce reasonable two year restriction). Given this range, courts applying Florida law routinely uphold post-employment covenants of up to two years – a full year longer than Burch's restrictions. *Id.*; *see also Technomedia Solutions, LLC v. Scopetto*, 2013 U.S. Dist. LEXIS 174767, at *33-34 (M.D. Fla. Dec. 13, 2013) (enforcing two year non-solicitation covenant); *State Chem. Mfg. Co. v. Lopez*, 642 So. 2d 1127, 1128-29 (Fla. 3d DCA 1994) (enforcing two year non-competition covenant); *Fla. Pest Control v. Thomas*, 520 So. 2d 669, 671 (Fla. 1st DCA 1988) (enforcing two year non-compete and non-solicitation covenants); *Graphic Bus. Sys. v. Rogge*, 418 So. 2d 1084, 1087 (Fla. 2d DCA 1982) (enforcing two year restrictive covenant). Accordingly, the length of Burch's restrictions are reasonable under Florida law – particularly considering Burch's high-level position with the company.

**ii. Burch's Covenants are Reasonable as to Geography and Scope of Activities.**

As a high-level National Sales Director for One Call, Burch had direct and indirect responsibility, oversight, and involvement with customers, and access to One Call strategies, business plans, pricing, margins, other confidential information, and goodwill, with respect to the entire United States. *See* Hillman Aff. ¶¶ 22-54. In his role, Burch shared responsibility for One Call's audiology accounts nationwide. *See id.* ¶¶ 31-50. Although Burch served as an audiology "subject matter expert" for One Call, One

Call provided him with specialized training, knowledge, and expertise in the area of promoting and selling products, programs, and services in the workers' compensation cost-containment industry, and he was responsible for identifying opportunities and promoting products, programs, and services across One Call's entire suit of offerings. *Id.*

In the 2014 Noncompete Covenant, Burch agreed that, for one year after the end of his One Call employment, he would not "provide services directly or indirectly, for the benefit of a Competitor in any role or position (as an employee, consultant, or otherwise) that would involve Competitive Business Activities within the Restrictive Area. *See* 2014 Agreement, Exh. A to Verif. Compl., ¶ 5.a(1). Accordingly, Burch's restrictions are limited only to activities that compete with One Call, and only in the area in which One Call does business – which is coextensive with the area to which Burch was assigned and in which he conducted business for One Call.

One Call is not seeking to restrict Burch from any and all involvement with audiology products and services, but only competitive involvement with competitive companies, *i.e.*, in the segment of the market that deals with workers' compensation. Considering that Burch sold products and services on behalf of One Call across the country in this niche market, restricting Burch from employment with One Call's competitors across the country for one year is reasonable and does not prevent him from seeking employment with audiology companies not selling products or services in the workers' compensation cost containment market.

In a highly-specific market such as this, where a limited number of competitors exist, it is reasonable to restrain the employee from working with these competitors

during a reasonable non-compete period. *See, e.g., AutoNation, Inc. v. O'Brien*, 340 F. Supp. 2d 1332, 1340 (S.D. Fla. 2004) (enforcing restriction prohibiting employee "from working in any geographic space in which [the employer] operates."); *Sentry Ins. v. Dunn*, 411 So. 2d 336, 336 (Fla. 5th DCA 1982) (enforcing two year covenant not to solicit customers without regard to the location of the customers).

As to the 2014 Customer Covenants, One Call is asking only that Burch be restricted from (1) accepting business from or providing services to any Covered Customer of One Call in pursuit of a Competing Line of Business; and (2) soliciting or attempting to solicit or communicate with or call on any Covered Customer of One Call in pursuit of a Competing Line of Business. *See* 2014 Agreement, Exh. A to Verif. Compl., ¶ 5a(2)-(3). "Covered Customer" is further narrowly defined to include any customer who purchased services from One Call or was solicited by One Call to purchase services if Burch either called upon or had business-related contact with that Covered Customer or received Confidential Information about that Covered Customer during the term of his employment. *See id.* ¶ 5.b. Because the 2014 Customer Covenants to which Burch agreed, and which One Call seeks to enforce, are limited are limited to only those customers with whom Burch had a direct or indirect nexus in terms of sales and confidential information, and only apply to communications in pursuit of a competing line of business, the non-solicitation restrictions are patently reasonable. *See, e.g., Moore*, 196 F. Supp. 2d at 1228; (enforcing non-solicitation covenant applicable to customers with whom former employee "had sales contact"); *Sentry Ins.*, 411 So. 2d at 336 (same). Indeed, courts applying Florida law routinely enforce non-solicitation

covenants that prohibit any contact by the employee with any customer concerning which the *employer* has established a protectable interest, regardless of the *employee's* level of contact with that customer. *Scopetto*, 2013 U.S. Dist. LEXIS 174767, at *35 ("the proper inquiry in determining whether the employer has a protectable interest is on the relationship between that employer and its prospective and existing customers; an employer need not prove that its former employee had a substantial relationship with any particular customer." (citing *Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1218 (S.D. Fla. 2005)).

**b. Burch's Covenants Protect One Call's Legitimate Business Interests**

Under Florida law, the term "legitimate business interest" includes, but is not limited to: trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers, patients, or clients; customer, patient, or client goodwill; and extraordinary or specialized training. Fla. Stat. § 542.335(1)(b). The statute provides that the "court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract." Fla. Stat. § 542.335(1)(h).

As a high-level National Sales Director, Burch was privy to an extensive amount of One Call's confidential and proprietary information, specifically information related to One Call's customers, business, products, and services. *See* Hillman Aff. ¶¶ 51-54. One

Call has a legitimate business interest in protecting its trade secrets, its valuable customer list, sales proposals, and account knowledge. Fla. Stat. § 542.335(1)(b); *see also Hapney v. Central Garage, Inc.*, 579 So. 2d 127, 134 (Fla. 2d DCA 1991). Confidential business information is considered a legitimate business interest that can be protected by a restrictive covenant in an employment agreement, without rising to the level of a trade secret under Fla. Stat. § 688.002. *See AutoNation*, 340 F. Supp. 2d at 1336-1337 (citing *New Horizons Comp. Learning Ctrs, Inc. v. Sillicon Valley*, 2003 U.S. Dist. LEXIS 25689 (M.D. Fla. Nov. 12, 2003)). These interests are protectable because Burch had intimate access to this trade secret and/or confidential information, all of which has been gathered by One Call at great expense over the course of many years and is not generally known to One Call's competitors. *See* Hillman Aff., ¶¶ 55-65. *See also East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 934 (Fla. 2d DCA 2001) (finding customer list qualifies as trade secret); *Hapney*, 579 So. 2d at 131 (holding protection of trade secrets, confidential business lists, records, and information constitute legitimate business interests protectable by restrictive covenants); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1558 (S.D. Fla. 1992) (finding customer list "clearly" protected as legitimate business interest).

Second, over the course of his four years with One Call, Burch had high-level access to One Call's key customers. *See* Hillman Aff. ¶¶ 31-50. One Call has a protectable interest in preventing Burch from soliciting his former customers and, in the process, unfairly competing against One Call with its own trade secret and confidential information in hand, while treading upon One Call's goodwill. "There is little question

under Florida law that an employer has a legitimate business in prohibiting solicitation of its customers with whom the employee has a substantial relationship." *North Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002) (citing *Hapney*, 579 So.2d at 134); Fla. Stat. § 542.335(1)(b). Where an employee, as here, gains substantial knowledge of his former employer's customers, their purchasing history, and their needs and specifications it follows that the employer has a legitimate business interest under the statute. *Id.*; *Litwinczuk v. Palm Beach Cardiovascular Clinic, LC*, 939 So. 2d 268, 272-73 (Fla. 4th DCA 2006).

In particular, Burch has intimate knowledge of One Call's business with the Fund and One Call's strategy with respect to the Fund (including the pending Statement of Work), given that Burch directly serviced this account while employed by One Call. *See* Hillman Aff. ¶¶ 44-50. Burch has also developed goodwill with key decision makers for One Call customers, including the key decision makers, including Claims Managers, for the Fund and Matrix. *See id.* and Exh. 2 thereto. One Call has a legitimate protectable interests in protecting Burch from using or disclosing its confidential information and trading upon its goodwill.

Finally, One Call has a protectable interest in the specialized training given to Sales Directors, like Burch, that allows them to succeed in the workers' compensation market. Although Burch had experience with hearing aids, Burch had no experience in the workers' compensation cost-containment industry before joining One Call. *See* Hillman Aff. ¶ 24. When Burch joined One Call, One Call trained him in Workers' Compensation, Durable Medical Equipment (DME), One Call's Provider Network and

how to utilize it, One Call's operational, contracting, and pricing strategies, and how to promote One Call products to its customers within the workers' compensation space. *See id.* ¶ 25. One Call also provided Burch with its customer data, built a One Call business plan with him, and provided him with the resources necessary to perform his job. *See id.* ¶ 26. Under Florida law, One Call has a legitimate protectable interest in this training. *See* Fla. Stat. § 542.335(1)(b)(5).

**2. Burch Breached his Post-Employment Covenants.**

Burch has repeatedly breached the material terms of the 2014 Agreement. The most egregious of these breaches came to light in the email inadvertently sent to Burch's One Call email account – an email that disclosed the ongoing plot by Burch to solicit the Fund, with whom he worked closely at One Call, on behalf of AHP and/or Cypress Care and, in the process, draw upon One Call's confidential information and goodwill. *See* Hillman Aff. ¶¶ 81-89 and Exh. 2 thereto. This email alone is sufficient evidence to establish a likelihood of success on the merits of One Call's breach of contract claims.

Nevertheless, One Call has just learned that Burch solicited yet another One Call customer with whom he worked closely at One Call – Matrix. *See* Hillman Aff. ¶¶ 90-98; Unruh Aff. ¶¶ 6-11. Matrix's decision-maker informed One Call's local account executive that Burch asked her for a lunch meeting. *See* Unruh Aff. ¶¶ 8-9. Because Burch did not inform the decisionmaker that he was no longer working for One Call, the client agreed to meet with Burch. *Id.* It appears, therefore, that Burch set up this meeting with One Call's decisionmaker under false pretenses and by trading on the goodwill

Burch built up while with One Call, at One Call's expense. This evidence, collectively and individually, more than suffices to justify the injunctive relief One Call seeks.

For example, in *Technomedia Solutions, LLC v. Scopetto*, the employee sent an email to the existing and prospective customers of her former employer days after terminating her employment. 2013 U.S. Dist. LEXIS 174767, at *8-13. In the email, the employee informed customers that she had accepted employment with a competitor, disclosed her new contact information, and listed some of the services the competitor offered. *Id.* Based on this email, the Court enjoined the employee for two years, finding:

> The contents of Scopetto's e-mail constitute strong evidence that she was attempting to solicit business from Technomedia's existing and prospective clients to which the email was addressed for the account of her new employer. Scopetto has done substantially more in her email than merely inform Technomedia's clients of her new contact information.

*Id.* at *38; *see also Schwend, Inc. v. Cook*, 2006 U.S. Dist. LEXIS 23931, at *4-10 (M.D. Fla. Mar. 22, 2006) (finding that similar email advising former customers of new employment with competitor and offering services was "compelling evidence in support of its [breach of non-competition and non-solicitation] claims").

Here, it is clear that Burch attempted to, and actually did, solicit key One Call customers. He targeted customers with whom he had extensive dealings at One Call, and about whom he received One Call confidential information and business plans. As in

*Scopetto* and *Schwend*, Burch should be enjoined from continuing to violate his non-compete and non-solicit obligations.[3]

### 3. One Call Has Suffered and Will Suffer Damage as a Result of Burch's Conduct.

Finally, "[t]he focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business." *Moore*, 196 F. Supp. 2d at 1230-1231. Thus, at least at this stage, damages resulting from Burch's breach of his post-employment obligations by soliciting, at a minimum, the Fund and Matrix on behalf of AHP and/or Cypress Care, is not readily quantifiable because it constitutes an erosion of the business relationships and goodwill One Call has with its customers within the workers' compensation products and services market that One Call has developed over the years such that injunctive relief is the only appropriate remedy and satisfies the damages element. *Id.*

## B. One Call Has Suffered and Will Suffer Irreparable Injury if Burch is Not Enjoined.

Under the Florida Statutes, the " court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury". Fla. Stat. § 542.33(j). "[I]rreparable injury may be presumed where there is a violation of a covenant not to compete." *Graphic Bus. Sys., Inc. v. Rogge*, 418 So. 2d 1084, 1086 (Fla. 2d DCA 1982) (citations omitted). Further, "direct solicitation of

[3] Pursuant to Section 5.d of the 2014 Agreement, One Call is entitled to have the restrictive covenants extended by one day for each day Burch is found to have violated them, up to a maximum of one year.

existing customers [is] presumed to be an irreparable injury and may be specifically enjoined." Fla. Stat. § 542.33(2)(a). Indeed, Burch expressly acknowledge that a violation of his restrictive covenants would result in "irreparable harm," and consented to injunctive relief in his agreement. *See* 2014 Agreement, Exh. A to Verified Complaint, §§ 5.a, 5.d ("I understand that if I violate this Agreement (particularly the Protective Covenants), the Company will be entitled to (i) injunctive relief by temporary restraining order, temporary injunction, and/or permanent injunction . . . and (iii) any other legal and equitable relief to which the Company may be entitled.").

In *AutoNation, Inc. v. O'Brien*, the Southern District of Florida found that the threat posed by a high-level employee's employment departure to a competitor – where the employee had involvement in numerous facets of the employer's business, relationships with customers, and access and knowledge of confidential information – was sufficient to find irreparable harm absent the issuance of preliminary injunctive relief:

> [A]s a Manager of Used Vehicle Operations employed within AutoNation's corporate headquarters, O'Brien had access to confidential and proprietary business information. O'Brien's responsibilities included managing policies, procedures, systems, vehicle programs, practices, and reports between and among AutoNation's national districts and numerous dealerships. O'Brien had access to financial and business-related analyses, research, forecasts, trends in sales, finance, and overall business conditions. Additionally, O'Brien was responsible for working on a Used Vehicle Manager Training Course which O'Brien recommended that AutoNation "make absolutely clear that the system is proprietary to AutoNation and not be shared outside the company."

> O'Brien also participated in negotiating AutoNation's contract with Auto Exchange, a widely used program in the automotive industry. In a draft memorandum to … AutoNation's President and Chief Operating Officer, O'Brien highlighted various points of the Auto Exchange contract including the fact that "future improvements/changes will be proprietary to [AutoNation]." Further, attached to the contract with Auto Exchange was a list of materials that AutoNation deemed confidential and proprietary. Additionally, O'Brien was asked to participate in the Used Car Manager Assessments which cataloged AutoNation's used car managers' performance at various AutoNation dealerships. Finally, O'Brien had access to AutoNation's 3-year Strategic Plan.
>
> Moreover, the evidence presented at the hearing demonstrated that O'Brien is in a position to use AutoNation's confidential and proprietary business information in a way that would irreparably harm AutoNation's business interests. The Court notes that the used car business is a "highly competitive" industry and that O'Brien would be able to implement, or mirror, what he learned about AutoNation's policies, practices, and business methods, in his new position with one of AutoNation's direct competitors

340 F. Supp. 2d at 1338.

Similarly, Burch has directly solicited, and is directly soliciting, the Fund and Matrix for and/or on behalf of himself, AHP, and Cypress Care. *See* Hillman Aff. ¶¶ 81-98; Unruh Aff. ¶¶ 6-11. Burch had direct responsibility for the sales and service to the Fund and its Provider Network, and Matrix at One Call. *See* Hillman Aff. ¶¶ 44-50; Unruh Aff. ¶¶ 6-7. This solicitation, whether through his years of familiarity of highly confidential matters, such as pricing and customer preferences, or the documents (such a One Call's business plan) he impermissibly retained, concerning confidential information that can – and likely already has – allows Burch and One Call's direct competitors to

unfairly compete against it by, among other things, undercutting One Call's pricing of products and services and otherwise using the information to gain an unfair advantage against One Call. *See* Hillman Aff. ¶¶ 104-111. Accordingly, unless Burch's ongoing breaches are immediately restrained, One Call has and will continue to suffer irreparable and incalculable injury and is entitled to injunctive relief to prevent Burch's further solicitation of the Fund, Matrix, and other customers, and to protect One Call's legitimate business interests in its confidential information and goodwill. *See id.* AHP and Cypress Care will still be able to compete against One Call legitimately – without the ill-gotten shortcut of One Call's goodwill and confidential, proprietary, and trade secret information, and by respecting the one-year "stand-down" period against Burch's competition with One Call.

### C. **Any Harm to Burch is Outweighed by the Harm to One Call.**

Courts applying Florida law are precluded, by statute, from considering any individual economic or other hardship an employee, like Burch, might suffer as a result of the enforcement of the restrictive covenant. *See* Fla. Stat. § 542.335(1)(g)(1).

But, even if individual hardship were a proper consideration, the balance of harm would still tip heavily in One Call's favor. One Call is not seeking to have Burch restrained from any and all employment involving audiology products and services; rather, One Call is seeking to restrain Burch for a period of one year from working with One Call's competitors in the workers' compensation space. One Call is further seeking to restrain Burch from soliciting or further calling upon the customers for which he was responsible as an employee of One Call and to otherwise not use or disclose One Call's

confidential information. Requiring Burch to honor the reasonable and necessary contractual obligations he voluntarily entered into is patently reasonable, particularly in light of the fact that Burch received more than three-quarters of a million dollars in compensation during his four years' of employment with One Call. *See* Hillman Aff. ¶ 29. In sum, One Call faces significant irreparable harm that necessitates the issuance of injunctive relief even absent a statutory presumption.

### D. The Issuance of a Preliminary Injunction Will Serve The Public Interest.

Under Florida law, the public has an interest in the enforcement of restrictive covenants. *Moore*, 196 F. Supp. 2d at 1231-1232. Indeed, the Florida Statute, which validates much broader restrictions, is indicative of the public's interest in the enforcement of reasonable restrictive covenants. Fla. Stat. § 542.335. The statute "sharply limits the use of the 'contrary to public policy' defense to enforcement of a restrictive covenant." *Moore*, 196 F. Supp. 2d at 1232. A court may not refuse enforcement on grounds of public policy unless the court articulates the public policy with specificity and finds that the specified public policy requirements substantially outweigh the need to protect the interest established by the proponent of the restriction. Fla. Stat. § 542.335(l)(i).

The enforcement of the confidentiality agreements and restrictive covenants furthers the public interest in the integrity of contracts and the fulfillment of the parties' legitimate expectations with respect thereto. A company like One Call that builds a business and substantial client knowledge and contact through expenditure of substantial time, money, and effort should know that it will be protected from unfair competition by

another company which, to save time, money and effort, misappropriates a competitor's goodwill and confidential information and induces breaches of contractual and common law duties by its employees.

Here, an injunction would further promote the public interest in the protection of One Call's legitimate business interests and investment. Injunctive relief protects One Call's highly confidential client lists, pricing, contract and bid information (including on the pending Statement of Work issued by the Fund, for which One Call and Cypress Care have both submitted bids), and the confidentiality of all of the other valuable related information concerning One Call's existing and prospective customers. By contrast, Burch has flagrantly and secretly breached his post-employment obligations and has misappropriated One Call's confidential information and traded upon its goodwill.

The United States Supreme Court recognized the importance of these protections in *Kewanee Oil Company v. Bicron Corporation*:

> *The necessity of good faith and honest, fair dealing is the very life and spirit of the commercial world. It is hard to see how the public would be benefitted by disclosure of customer lists.*
>
> . . .
>
> In addition to the increased costs for protection from burglary, wiretapping, bribery, and other means used to misappropriate trade secrets, *there is the inevitable costs to the basic decency of society when one firm steals from another. A most fundamental human right, that of privacy, is threatened when industrial espionage is condoned or is made profitable; the state interest in denying profit to such illegal venture is unchallengeable.*

416 U.S. 470, 481, 487 (1974) (emphasis added).

The public interest can only be served if employers can be secure that their goodwill and confidential information are not in jeopardy when employees depart. A contrary rule would make employers reluctant to hire, and it would make them reluctant to give their sales force access to the information they need to further the employer's business.

## IV. BOND

Rule 65(c) provides that no restraining order shall issue except upon the giving of security by the applicant, "in such sum as the court deems proper for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); M.D. Fla. L. R. 4.05(a)(3); *see also* Fla. Stat. § 542.335(j).

In this case, in light of Burch's flagrant breaches of his post-employment obligations, which has necessitated the filing of this action, One Call should only be required to post a nominal bond. With that said, One Call is prepared to post a bond as security for the issuance of a preliminary injunction. Because One Call has established a clear right to the relief sought, however, One Call respectfully asks this Court to set a nominal bond, but in any event not to exceed one month of Burch's One Call salary.

## V. CONCLUSION

One Call has established a likelihood of success on the merits. If Burch is not enjoined, One Call will suffer irreparable harm that exceeds any harm to Burch. The injunction requested serves the public interest in protecting a company's legitimate interests and its investment in its business, confidential information, and goodwill.

Accordingly, One Call respectfully requests that the Court issue a preliminary injunction prohibiting Burch from: (1) working for AHP, Cypress Care, or any other competitor of One Call in any capacity competitive with One Call for a period of one year from the date of entry of the injunction order; (2) from directly or indirectly soliciting the customers (including, but not limited to, the customers he has already solicited, including the Fund and Matrix) that he serviced or otherwise had involvement or concerning which he obtained confidential information while employed by One Call for a period of one year from the date of entry of the injunction order; (3) using or disclosing any of One Call's trade secrets or confidential information, as defined in Burch's agreements with One Call; and (4) further retaining any of One Call's confidential information or trade secrets in his possession, custody, or control.

Dated: January 11, 2016

Respectfully submitted,

By: /s/ KV

Kevin E. Vance, Esq.
DUANE MORRIS LLP
200 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Telephone: 305.960.2311
Fax: 305.397.2264
kevance@duanemorris.com
*Attorneys for Plaintiff,*
*MSC Group, Inc.*
*d/b/a One Call Care Management*